Daniel J. Sherman
State Bar No. 18241000
SHERMAN & YAQUINTO, L.L.P.
509 N. Montclair Avenue
Dallas, TX 75208-5498
214/942-5502 Fax: 214/946-7601
Attorneys for Trustee
James W. Cunningham

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **HEARTHWOOD NORTH I,** | § | **CASE NO. 12-35375-SGJ-11** |
| **ASSOCIATION, INC.,** | § | |
| DEBTOR | § | |
| | § | |
| JAMES W. CUNNINGHAM, TRUSTEE | § | |
| | § | |
| VS. | § | **ADVERSARY CASE NO:  12-_____** |
| | § | |
| ALLIANT PROPERTIES LLC SERIES E | | |
| Et al, as listed on Ex "A" | § | |
| DEFENDANTS | § | |

**COMPLAINT BY TRUSTEE TO APPROVE SALE OF THE
INTEREST OF CO-OWNERS IN PROPERTY**

TO THE HONORABLE STACEY G.C. JERNIGAN, U.S. BANKRUPTCY JUDGE:

The complaint of James W. Cunningham, trustee, respectfully alleges:

1.    James W. Cunningham is the Chapter 11 trustee in this case.

2.    After a year of managing this property Cunningham has concluded that deferred
maintenance combined with design deficiencies have lead to the economic
obsolescence for the 7 remaining buildings and the Court has authorized the
cessation of management services.  The trustee believes the unit owners will
receive maximum value if the property is sold for the value of the land.

3.    The Court has jurisdiction over this adversary pursuant to 28 U.S.C. §1334, as
this is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(N)&(O), 11 U.S.C

§363(h) and F.R.B.R. 7001(3). Venue properly lies in this judicial district pursuant to 28 U.S.C. §1409(a), in that the instant adversary proceeding is related to the above-captioned case under title 11 of the United States Code which is still pending.

4.     There are two hundred four (204) condominium units in the Hearthwood  North I condominium regime.   The debtor owns approximately 19 units which were acquired generally from a failure of owners to pay the HOA dues.  A list of the owners of the 204 units is attached to this complaint as Exhibit "A".  The trustee will serve personally each owner of a unit or will obtain a stipulation acknowledging receipt of the complaint and consent to a judgment granting the relief sought in this complaint.

5.     §363(h) of the Bankruptcy Code gives the trustee the power to sell both the estate's interest and the interest of any co-owner in property in which the debtor has an undivided interest as a tenant in common if

    A.  Partition in kind among the debtor's units and the other co-owners' units is impracticable;

    B.  Sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;

    C.  The benefit to the estate of a sale of such property free of the interests of the co-owners outweighs the detriment, if any, to such co-owners; and

    D.  The property is not used in the production, transmission, or

distribution, for sale, of electric energy or of natural or synthetic gas

for heat, light, or power.

6.       The Condominium Declaration for this debtor grants the unit owners an undivided

interest in the Common Elements owned as tenants in common in accordance

with their respective percentages of ownership.  A copy of the Condominium

Declaration is attached as Exhibit "B" and gives the legal description of the 9.03

acres of land that comprises the condominium regime.

7.       The sale of the entire tract of land is the only practicable disposition of the

interests.  Partition in kind among the individual unit owners is impracticable.

8.       Sale of the undivided interests of the estate's approximate 15 units would realize

significantly less for the estate than the sale of such property free of the interests

of the other 189 co-owners.

9.       The benefit to the estate of a sale of the estate's property free of the interests of

the co-owners outweighs the detriment, if any, to such co-owners.

10.     This condominium is not involved in the production, transmission, or distribution,

for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

FOR THESE REASONS, James W. Cunningham asks this Court to

- Authorize him to sell both the estate's interest and the interest of all co-
  owners in the 9 acres that comprise the legal description of the Hearthwood
  North I condominium regime;

- Authorize the sale as free and clear of any liens with liens to attach to the
  proceeds of the respective unit owner's interest; and

- Grant any other relief this Court may deem appropriate.

October 4, 2013

   /s/  Daniel J. Sherman
**Daniel J. Sherman**
State Bar No. 18241000
SHERMAN & YAQUINTO, L.L.P.
509 N. Montclair Avenue
Dallas, TX 75208-5498
214/942-5502 Fax: 214/946-7601
ATTORNEY FOR
JAMES W. CUNNINGHAM, TRUSTEE

Exhibit "B", The Declaration of Condominium for Hearthwood North I, is over 74 pages and has been provided only to the Court.  A copy of Exhibit "B" will be provided to any party that contacts the trustee's attorney requesting a copy.

# EXHIBIT A

| Unit # | Owner |
|---|---|
| 111 | Alliant Properties LLC  Series E |
| 112 | House, James Stuart |
| 113 | Mould, Anna |
| 114 | Brisco, Andrew |
| 115 | Dang, Nhan Thi |
| 116 | Sariles, Luis a & Doris E |
| 121 | Alliant Properties LLC  Series E |
| 122 | Sharma, J K |
| 123 | Narciso, Jose & Joyce |
| 124 | Flewellen, Andre |
| 125 | Lin, Shou Ju & Huang Shao Huan |
| 126 | Theresa & Edgardo C DeGuia |
| 131 | Gian, Jack J |
| 132 | Matthews, Edward L |
| 133 | Boone, Patrice M |
| 134 | Le Ha |
| 135 | James K Davis & London Shot Wilson |
| 136 | Weber, June E |
| 211 | JPMmorgan Chase Bank |
| 212 | Phillips, Wendell |
| 213 | Le, Ha |
| 214 | Lo, Foong Foong |
| 215 | Hearthwood North I HOA |

# EXHIBIT A

| Unit # | Owner |
|--------|-------|
| 216 | Green Extreme Homes CDC |
| 217 | Ticzon, Eugene c |
| 218 | Hearthwood North I Assoc, Inc |
| 221 | Reed, Charles |
| 222 | Reyna, Asencion Ray |
| 223 | Ayub, Ijaz |
| 224 | Hearthwood North I Assoc, Inc |
| 225 | Li, Jin Dong |
| 226 | Li, Jin Rong |
| 227 | Flores, Ferreol |
| 228 | Donald Thompson |
| 231 | Fuentes, Yesenia |
| 232 | Pugh Properties LLC |
| 233 | Cassidy, John A, Trustee |
| 234 | Troupe, Damond |
| 235 | Hearthwood North I Assoc, Inc |
| 236 | Estate of  Hyme Schnitzer |
| 237 | Rogers, Brian & Colleen |
| 238 | Rogers, Brian & Colleen |
| 311 | Li, Jin Fan |
| 312 | Rizvi Khalid & Khlzar Rafia |
| 313 | Ali, Dehab |
| 314 | Latif, Khalid |

# EXHIBIT A

| Unit # | Owner |
|--------|-------|
| 315 | Le, Duc |
| 316 | Salas, Sergio |
| 317 | Le, Duc Hong |
| 318 | Johnson, Jeffery & Griffin, Robert |
| 321 | Hanggodo, Sentiani |
| 322 | James K Davis & London Wilson, Jr. |
| 323 | Catala, Miguel G. |
| 324 | James K Davis & London Shot Wilson |
| 325 | Luu, Gary |
| 326 | Hearthwood North I Assoc, Inc |
| 327 | Gauthier, Felicia A |
| 328 | Laci, Gezim & Mirjan Laci |
| 331 | Hearthwood North I Assoc., Inc. |
| 332 | Bams Holdings LLC |
| 333 | Kang, Pung Sung & Soon Ja |
| 334 | Nabar, Deodatta |
| 335 | Gray, James H et al |
| 336 | Chang, Chen Ping |
| 337 | HT Solutions Inc |
| 338 | Le, Duc H |
| 411 | Bala, Teferi D. |
| 412 | ABRAMS 412 LLC |
| 413 | DANG, NHUT |

# EXHIBIT A

| Unit # | Owner |
|---|---|
| 414 | CHANG, MING CHE |
| 415 | ADUGNA, DERIB |
| 416 | MATTHEWS, EDWARD L |
| 417 | Realvestors LLC |
| 418 | Hearthwood North I Assoc, Inc |
| 421 | RIZVI, HASSAN |
| 422 | RIZVI, HASSAN |
| 423 | ESTRELLA, MANOLITO & ROSARIO |
| 424 | JUSTINIANI, FLOR P |
| 425 | CALMA, JOHN |
| 426 | Hearthwood North I Assoc, Inc |
| 427 | FOWLES, CRAIG T |
| 428 | HICKMAN, STEVEN C |
| 431 | HUANG, ZHENG |
| 432 | MCCOY, MICHAEL L |
| 433 | Redig, Richard R |
| 434 | MEDINA, GILBERT JR |
| 435 | TANZIE, ANNISHA M |
| 436 | GRIFFIN, HAROLD ROBERT |
| 437 | ANYIKE, GRACE |
| 438 | LESTER, JOHN P |
| 511 | ACOSTA, ELIAS ROBERTO |
| 512 | TSO, JIM & GAHBING |

# EXHIBIT A

| Unit # | Owner |
|---|---|
| 513 | MCCOY, MIKE L |
| 514 | CHOU, SHIRMY |
| 515 | MCCOY, MICHAEL L |
| 516 | Semyon & Boris Olshansky |
| 517 | HOUSE, JAMES STUART |
| 518 | HEBERT, YON YE |
| 521 | KARIMI, PARVIZ |
| 522 | HOUSE, JAMES S |
| 523 | LEE, STEVE B |
| 524 | GONG, XINYI & YEOU DONG |
| 525 | LEE, STEVE B |
| 526 | TEXAS PREMIER REAL ESTATE GROUP LLC |
| 527 | MATTHEWS, EDWARD L |
| 528 | JOHNSEY, DOROTHY N EST OF |
| 531 | JASON CHICUONG & ALICE CHUNMEI HUANG |
| 532 | HUDSON, RENEE |
| 533 | BOTEJU, ANTHONY & BERNARD |
| 534 | CHUNG, HOAI MY |
| 535 | TRAN, HOANG LE |
| 536 | SARGENT, MARY ELLEN |
| 537 | DONG, YEOU & |
| 538 | ADDAJ, NADIA |
| 611 | Hearthwood North I Assoc., Inc |

# EXHIBIT A

| Unit # | Owner |
|---|---|
| 612 | HERNANDEZ, GLORIA |
| 613 | Hamilton, Melba |
| 614 | MORALES, JESUS CARLOS |
| 615 | BOTEJU, BERNARD |
| 616 | A & L ENGINEERING AND CONSULTING INC |
| 617 | Tabije, Estrelita |
| 618 | Williams, Dorothy |
| 621 | WILLIAMS, JERVIS |
| 622 | Yeh, Joseph |
| 623 | Ngo, Van Tuyet |
| 624 | Hearthwoo North HOA |
| 625 | Miguel Hernandez |
| 626 | BONILLA, ROMEO E |
| 627 | EDWARD CM HAN & ZHOU LI QING |
| 628 | ZHANG, XUE LIANG |
| 631 | TSO, JIM & |
| 632 | Hearthwood North I Condo or |
|  | Prince C. Nwaorgu |
| 633 | Hearthwood North I Assoc, Inc |
| 634 | JEZARI, ARMIN J |
| 635 | NGO, CHIEUANH BUI |
| 636 | Residential Funding Co. LLC % JPMorgan Chase Bank |
| 637 | WEBER, JUNE E |

# EXHIBIT A

| Unit # | Owner |
|--------|-------|
| 638 | Wilson, London Jr |
| 711 | Wilson, London Jr |
| 712 | RAMIREZ, RICHMOND |
| 713 | Tran, Lan |
| 714 | MIRASOL, ESTRELLA C |
| 715 | DUONG, LINH KIM |
| 716 | LIU, MEIHSIA |
| 717 | BOTEJU, BERNARD |
| 718 | RIZVI,  WAJIHA |
| 721 | RUMBAUGH, CHRISTOPHER L |
| 722 | ZHANG, OU & |
| 723 | KNIGHT, WILLIAM P |
| 724 | Hearthwood North I Assoc, Inc |
| 725 | Burwell, Harold S. |
| 726 | CHANG, MING C |
| 727 | Hearthwood North I Condo |
| 728 | ST CLAIR, ANITA J |
| 731 | Le, Duc |
| 732 | Alliant Properties LLC  Series E |
| 733 | Hearthwood North I Assoc, Inc |
| 734 | EMILIA M & ROBERT T JOAQUIN |
| 735 | CHING YI LIN & YUNG CHIEH LIAO |
| 736 | ESPINOSA, ROGELIO |

# EXHIBIT A

| Unit # | Owner |
| --- | --- |
| 737 | GONG, XINYI & YEOU DONG |
| 738 | Theresa & Edgardo C DeGuia |
| 811 | BOTEJU, BERNARD |
| 812 | BOKHARI, WAQAR |
| 813 | Bams Holdings LLC |
| 814 | YAN WENHAO & DANNY PHAN |
| 815 | BAXTER, EDMUND F JR |
| 816 | Hearthwood North I Assoc, Inc |
| 821 | BOSTON, P TALMADGE  % MARC LUZZATTO |
| 822 | NDABA, HENRY & MARIE NDAYIRAGIJE |
| 823 | BANK OF AMERICA |
| 824 | Peng, Linan |
| 825 | JAMET & ELIZABETH ABDULAI |
| 826 | SAMUEL, MATHEW C |
| 831 | ARAGAW, DEMESSIE |
| 832 | HARRISON, MARTHA SUSAN |
| 833 | ROESCHLEY, LUCAS & SARAH |
| 834 | HOWARD, EVERETT L |
| 835 | Ball, Dora |
| 836 | HOWARD, EVERETT L & CLEO M |
| 911 | Hearthwood North I Assoc., Inc. |
| 912 | Ren Yibo & Dean Liu |
| 913 | Mond, Jeffrey A |

# EXHIBIT A

| Unit # | Owner |
|--------|-------|
| 914 | NADBY, NOAM |
| 915 | HAMILTON, AINA ABIMBOLA |
| 916 | Le, Duc |
| 917 | PEDRO J SANCHEZ & HENELY TAVAREZ |
| 918 | NGO CHIEUANH BUI |
| 921 | Veksler, Eugene |
| 922 | Vaughn, Cindy K |
| 923 | Mai, Christopher |
| 924 | Dong, Yeou & Gong, Xinyi |
| 925 | David Wilcox |
| 926 | Portman, Hal |
| 927 | Chang, Ming Che & |
| 928 | Dong, Yeou & Gong, Xinyi |
| 931 | Duna, Orlando M & Jo Ann |
| 932 | 972 Abrams LLC |
| 933 | Elpidio & Rubyellen Jambalos |
| 934 | Mond, Jeffrey A |
| 935 | Guan, Hao |
| 936 | Boteju, Anthony & Bernard |
| 937 | Williams, Willie Mae |
| 938 | Hearthwood North I Condo |

## CONDOMINIUM
## RECORDS

### DECLARATION OF CONDOMINIUM
### FOR HEARTHWOOD NORTH I

2245        0   150.00 DEED
                1 08/15/77

THIS DECLARATION, made and entered into by U.S.
HOME CORPORATION, a Delaware corporation, as follows:

## W I T N E S S E T H

WHEREAS, U.S. HOME CORPORATION, a Delaware corporation,
is the owner of real estate located in the County of Dallas,
State of Texas, more particularly described on Exhibit A
attached hereto;

WHEREAS, said U.S. HOME CORPORATION intends to and
does hereby submit the Parcel (as said term is hereinafter
defined), together with all buildings, structures, improvements
and other permanent fixtures of whatsoever kind now or
hereafter located thereon, and all rights and privileges
belonging or in anywise pertaining thereto (hereinafter
called the "Property"), to a condominium regime pursuant to
Article 1301a of the Revised Civil Statutes of Texas; and

WHEREAS, said U.S. HOME CORPORATION further desires
to establish for its own benefit and for the mutual benefit
of all future owners or occupants of the Property or any
part thereof, and intends that all future owners, occupants,
mortgagees, and any other persons hereafter acquiring any
interest in the Property shall hold said interest subject to
certain rights, easements and privileges in, over and upon
said premises and certain mutually beneficial restrictions
and obligations and liens with respect to the proper use,
conduct and maintenance thereof, hereinafter set forth, all
of which rights, easements, privileges, restrictions, obligations
and liens are declared to be in furtherance of a plan to
promote and protect the co-operative aspects of residence
on the Property and are established for the purpose of
enhancing and perfecting the value, desirability and attractiveness
of the Property;

NOW, THEREFORE, said U.S. HOME CORPORATION, as the
owner of the real estate hereinbefore described, and for the
purposes above set forth, declares as follows:

1.. **Definitions.** As used herein, unless the context
otherwise requires:

(a)  "Act" means Article 1301a of the Revised
Civil Statutes of Texas.

(b)   "Association" means Hearthwood North I Association, Inc., a Texas non-profit corporation.

(c)   "Budget" shall mean the budget of the Association reflecting the costs of common elements maintenance.

(d)   "Board" means the Board of Directors of the Association.

(e)   "Buildings" shall mean the three (3) buildings located or to be located on the Parcel and forming part of the Property and containing Units. The "Buildings" are marked as Building A through Building C, inclusive, on Exhibit A hereto.

(f)   "By-Laws" means the By-Laws of the Association.

(g)   "Common Elements" means all of the Property except for the Units, and, without limiting the generality of the foregoing, shall include those items defined as "general common elements" in the Act, including the following:

   (1)   The Parcel;

   (2)   All foundations, bearing walls and columns, roofs, halls, lobbies, stairways, and entrances and exits or communicationways;

   (3)   All roofs, yards, and gardens, except as otherwise herein provided or stipulated;

   (4)   All compartments or installations of central services such as power, light, gas, cold and hot water;

   (5)   All elevators and elevator shafts;

   (6)   All recreational areas, swimming pools and the like existing for common use; and

   (7)   All other elements of the Building or Parcel desirably or rationally of common use or necessary to the existence, upkeep and safety of the condominium regime established by this Declaration.

29160   0911

- 2 -

(h)   "Common expenses" means and includes:

(1)   All sums lawfully assessed against the Common Elements by the Managing Agent or Board;

(2)   All expenses of administration and management, maintenance, operation, repair or replacement of and additions to the Common Elements;

(3)   Expenses agreed upon as common expenses by the Unit Owners; and

(4)   Expenses declared to be common expenses by this Declaration or by the By-Laws.

(i)   "Council of Co-Owners" means all of the Unit Owners, which Council of Co-Owners has been or will be incorporated as the Association.

(j)   "Declarant" means U.S. HOME CORPORATION, a Delaware corporation, its successors and assigns, provided such successors or assigns are designated in writing by Declarant as a successor or assign of the rights of Declarant set forth herein.

(k)   "Declaration" means this instrument, by which the Property is submitted to the provisions of the Act, as hereinafter provided, and such Declaration as amended from time to time.

(l)   "Family Group" means a group consisting of all Occupants residing in a Unit or more than one Unit used together.

(m)   "Limited Common Elements" means all Common Elements serving exclusively a single Unit or one or more adjoining Units as an inseparable appurtenance thereto, the enjoyment, benefit or use of which is reserved to the lawful Occupants of such Unit or Units either in this Declaration, on the Plat or by the Board.  Limited Common Elements shall include, but shall not be limited to, carport parking areas, located as shown on Exhibit A and appurtenant to the respective Units as set out on Exhibit B, balcony and patio areas accessible only from a Unit and storage areas appurtenant to a specific Unit only, hallways and elevators adjacent to or serving only a Unit or Units, as well as "air handlers", pipes, ducts, electrical

79160   0912

- 3 -

wiring and conduits located entirely within a Unit or adjoining Units and serving only such Unit or Units, and such portions of the perimeter walls, floors and ceilings, doors, vestibules, windows, and entryways, and all associated fixtures and structures therein, as lie outside the Unit boundaries.

(n) "Majority" or "majority of the Unit Owners" means the owners of more than fifty percent (50%) of the undivided ownership of the Common Elements. Any specific percentage of Unit Owners means that percentage of Unit Owners who in the aggregate own such specified percentage of the entire undivided ownership of the Common Elements.

(o) "Mortgage" means a mortgage or deed of trust covering a Unit and the undivided interest in the Common Elements appurtenant thereto.

(p) "Mortgagee" means a beneficiary under a Mortgage.

(q) "Occupant" means a person or persons in possession of a Unit, regardless of whether said person is a Unit Owner.

(r) "Parcel" means that certain parcel or tract of real estate identified as Phase I on Exhibit A attached hereto and by this reference made a part hereof.

(s) "Person" means a natural individual, corporation, partnership, trustee or other legal entity capable of holding title to real property.

(t) "Phase II" shall mean that certain parcel or tract of real estate identified as Phase II on Exhibit A attached hereto and by this reference made a part hereof.

(u) "Phase III" shall mean that certain parcel or tract of real estate identified as Phase III on Exhibit A attached hereto and by this reference made a part hereof.

(v) "Plat" means the survey of the Parcel and the floor and elevation plans and drawings of all Units in the Property, attached hereto as Exhibit A and by this

79160   (913)

- 4 -

reference made a part hereof.  The Plat contains a
description of the Parcel, the location of the Buildings
on the Parcel with the Buildings denoted by Number and
a description and location for each Unit.

(w)  "Property" means all the land, property and
space comprising the Parcel, and all improvements and
structures erected, constructed or contained therein or
thereon, including the Buildings, club house, swimming
pool and tennis courts, and all easements, rights and
appurtenances belonging thereto, and all furniture,
furnishings, fixtures and equipment intended for the
mutual use, benefit or enjoyment of the Unit Owners.

(x)  "Record" or "Recording" refers to the record
or recording in the Office of the County Clerk of
Dallas County, Texas.

(y)  "Unit" means an enclosed space consisting of
one or more rooms occupying all or part of a floor or
floors in the Buildings, which enclosed space is not
owned in common with the Unit Owners of other Units.
Each Unit is numbered as shown on the Plat, and the
boundaries of each Unit shall be and are the interior
surfaces of its perimeter walls, floors, and ceilings
and the exterior boundaries of any balconies and terraces
constituting a part thereof; and a Unit includes both
the portion of the Buildings so described and the air
space so encompassed, excepting Common Elements.  Any
Unit may be jointly or commonly owned by more than one
person.  It is intended that the term "Unit" as used in
this Declaration shall have the same meaning as the
term "Apartment" as used in the Act.

(z)  "Unit Owner" means the person or persons
whose estates or interests, individually or collectively,
aggregate fee simple ownership of a Unit and of the
undivided interest in the Common Elements appurtenant
thereto, but shall not include those having an interest
in a Unit merely as security for the performance of an
obligation.  Unless specifically provided otherwise
herein, Declarant shall be deemed a Unit Owner so long
as it is the legal title holder of any Unit.

2.  Submission of Property to the Act.  Declarant, as
the legal title holder in fee simple of the Parcel, expressly
intends to, and by recording this Declaration does hereby,
submit the Parcel and the Property to the provisions of the

29160     (314)

- 5 -

Act; provided, however, nothing contained herein shall
submit nor be deemed to submit Phase II or Phase III to the
provisions of the Act until Declarant so submits the same
pursuant to the provisions of Paragraph 21 of this Declaration.
The Property is submitted to the provisions of the Act
subject to easements and reservations affecting the Parcel
recorded in the Official Public Records of Real Property of
Dallas County, Texas.

3. <u>Plat</u>. The Plat sets forth the descriptions,
locations and other data, as required by the Act, with respect
to (1) the Parcel and its exterior boundaries; (2) the
Buildings and each floor thereof; and (3) each Unit.

4. <u>Units</u>. The legal description of each Unit shall
consist of the identifying number of such Unit as shown on
the Plat. Every deed, lease, mortgage or other instrument
shall legally describe a Unit by its identifying number as
shown on the Plat and every such description shall be deemed
good and sufficient for all purposes, as provided in the
Act. Except as provided by the Act, no Unit Owner shall, by
deed, plat, court decree or otherwise, subdivide or in any
other manner cause his Unit to be separated into any tracts
or parcels different from the whole Unit as shown on the
Plat.

5. <u>No Partition</u>. The Common Elements shall remain
undivided and shall not be the object of any action for
partition or division of the co-ownership thereof so long as
suitable for a condominium regime, and, in any event, all
Mortgages must be paid in full prior to bringing an action
for partition or the consent of all Mortgagees must be
obtained.

6. (a) <u>Association of Unit Owners and Administration
and Operation of the Property</u>. There has been or will
be formed an Association having the name "Hearthwood North I
Association, Inc.", a Texas non-profit corporation, which
Association shall be the governing body for all of the
Unit Owners, for the maintenance, repair, replacement,
administration and operation of the Property, as provided in
the Act, this Declaration and the By-Laws. The Board of
Directors of the Association shall be elected and shall
serve in accordance with the provisions of the By-Laws. The
fiscal year of the Association shall be determined by the
Board, and may be changed from time to time as the Board
deems advisable. The Association shall not be deemed to be
conducting a business of any kind. All activities undertaken

29160    (915

- 6 -

by the Association shall be for the sole benefit of the Unit Owners, and all funds received by the Association shall be held and applied by it for the use and benefit of Unit Owners in accordance with the provisions of this Declaration and the By-Laws. Each Unit Owner shall be a member of the Association so long as he is a Unit Owner. A Unit Owner's membership shall automatically terminate when he ceases to be a Unit Owner. Upon the conveyance or transfer of a Unit Owner's ownership interest to a new Unit Owner, the new Unit Owner shall simultaneously succeed to the former Unit Owner's membership in the Association. The aggregate number of votes for all members of the Association shall be one hundred (100) and shall be divided among the respective Unit Owners in accordance with their respective percentages of ownership interest in the Common Elements as set forth in Exhibit B hereto.

(b) <u>Management of Property</u>. The Board shall have the authority to engage the services of an agent (herein sometimes referred to as the "Managing Agent") to maintain, repair, replace, administer and operate the Property, or any part thereof, to the extent deemed advisable by the Board, subject to the provisions of subparagraph (c) below. The Board shall also have the authority (but shall not be obligated) to engage, supervise and control such employees as the Board deems advisable to clean and maintain all or any part of the Units to the extent the Board deems it advisable to provide such services for all or any portion of the Unit Owners. The cost of such services shall be a common expense.

(c) <u>Initial Management Contract</u>. The first Board, appointed as provided herein, may approve an initial management agreement as provided in the By-Laws.

(d) <u>Apartments for Building Personnel</u>. The Board shall have authority to lease, purchase and mortgage one or more residential quarters for a building manager and engineer. All rental or debt service paid by the Association pursuant to any such lease agreement or mortgage shall be a common expense.

(e) <u>Use by Declarant</u>. During the period of sale by the Declarant of any Units, the Declarant and its agents, employees, contractors and sub-contractors, and their respective agents and employees, shall be entitled to access, ingress to and egress from the Building and Property as may be required for purposes of said sale of Units. While the Declarant owns any of the Units and until each Unit sold by

23160    0916

- 7 -

it is occupied by the purchasers, the Declarant and its
employees may use and show one or more of such unsold or
unoccupied Units as a model Unit or Units and may use one or
more of such unsold or unoccupied Units as a sales office,
and may maintain customary signs in connection therewith.

(f) **Non-Liability of the Directors, Board, Officers,
and Declarant.** Neither the directors, Board or officers of
the Association nor Declarant shall be personally liable to
the Unit Owners for any mistake of judgment or for any acts
or omissions of any nature whatsoever as such directors,
Board, officers, or Declarant, except for any acts or omissions
found by a court to constitute gross negligence or fraud.
The Unit Owners shall indemnify and hold harmless each of
the directors, Board, officers, or Declarant, and their
respective heirs, executors, administrators, successors and
assigns in accordance with the provisions of the By-Laws,
and the Association shall carry such insurance as the Board
may prescribe to protect the directors, Board, officers or
Declarant under said indemnity.

(g) **Board's Determination Binding.** In the event of
any dispute or disagreement between any Unit Owners relating
to the Property, or any questions of interpretation or
application of the provisions of the Declaration or By-Laws,
such dispute or disagreement shall be submitted to the
Board.  The determination of such dispute or disagreement by
the Board shall be binding on each and all such Unit Owners,
subject to the right of Unit Owners to seek other remedies
provided by law after such determination by the Board.

7.  **Ownership of the Common Elements.** Each Unit Owner
shall be entitled to the percentage of ownership in the
Common Elements allocated to the respective Unit owned by
such Unit Owner, as set forth in Exhibit B attached hereto
and by this reference made a part hereof.  Said ownership
interest in the Common Elements shall be an undivided interest,
and the Common Elements shall be owned by the Unit Owners as
tenants in common in accordance with their respective percentages
of ownership.  The ownership of each Unit shall not be
conveyed separate from the percentage of ownership in the
Common Elements corresponding to said Unit.  The undivided
percentage of ownership in the Common Elements corresponding
to any Unit shall be deemed conveyed or encumbered with that
Unit, even though the legal description in the instrument
conveying or encumbering said Unit may refer only to the
title to that Unit.

79160    (917

- 8 -

8.   **Use of the Common Elements.**  Each Unit Owner shall have the right to use the Common Elements (except the Limited Common Elements and portions of the Property subject to leases made by or assigned to the Board) in common with all other Unit Owners, as may be required for the purposes of access, ingress to, egress from, use, occupancy and enjoyment of the respective Unit owned by such Unit Owner.  Such right to use the Common Elements shall extend to not only each Unit Owner, but also to his agents, servants, tenants, family members, customers, invitees and licensees.  However, each Unit Owner shall have the right to the exclusive use and possession of the Limited Common Elements serving such Unit alone or with adjoining Units.  Such rights to use the Common Elements, including the Limited Common Elements, shall be subject to and governed by the provisions of the Act, Declaration, By-Laws and rules and regulations of the Association.  In addition, the Association shall have the authority to rent, lease, grant concessions or grant easements with respect to parts of the Common Elements, subject to the provisions of the Declaration and By-Laws.  All income derived by the Association from leases, concessions or other sources shall be held and used for the benefit of the members of the Association, pursuant to such rules, resolutions or regulations as the board may adopt or prescribe.

9.   **Parking Areas.**  Carport parking spaces shall be assigned and be part of the Limited Common Elements, and shall be used by such Unit Owners in such manner and subject to such rules and regulations as the Board may prescribe, and carport parking spaces not so used by Unit Owners may be rented or otherwise used in such manner as the Board may prescribe.

10.   (a)  **Common Expenses.**  Each Unit Owner, including the Declarant, shall pay his proportionate share of the common expenses.  Except for its responsibilities as a Unit Owner, as provided herein, the Declarant shall not have any responsibility for the maintenance, repair or replacement of any part of the Common Elements after the date this Declaration is recorded.  Such proportionate share of the common expenses for each Unit Owner shall be in accordance with his percentage of ownership in the Common Elements.  Payment of common expenses, including any prepayment thereof required by contract for sale of a Unit, shall be in such amounts and at such times as determined in the manner provided in the By-Laws.  No Unit Owner shall be exempt from payment of his proportionate share of the common expenses by waiver of non-use or waiver of enjoyment of the Common Elements or Limited

79160   0918

- 9 -

Common Elements or by abandonment of his Unit.  If any Unit
Owner shall fail or refuse to make any such payment of the
common expenses when due, the amount thereof together with
interest thereon at the maximum rate as may then be permitted
under the laws of the State of Texas, accruing from and
after the date that said common expenses become due and
payable, shall constitute a lien on the interest of such
Unit Owner in the Property and his Unit.

   (b) <u>Monthly Assessment</u>.  The Budget sets forth
and describes for each Unit within the Parcel and for each
proposed Unit within Phase II and Phase III an amount designated
therein as the "Monthly Assessment".  Notwithstanding anything
contained in this Declaration to the contrary (including,
but without limitation, the terms and provisions of sub-
paragraph (a) above), for a period (hereinafter referred to
as the "Initial Period") of one year from and after the
first day of the calendar month next following the date of
recording of this Declaration, each Unit Owner shall pay and
be responsible for monthly, and his proportionate share of
the common expenses shall be deemed to be, his respective
Monthly Assessment, notwithstanding the fact his proportionate
share of the actual common expenses during the Initial
Period may be greater or less than his respective Monthly
Assessment.  If the total Monthly Assessments payable during
the Initial Period are greater than the actual common expenses
incurred during the Initial Period, such excess shall be
thereafter used as the Board may prescribe.  However, if the
total Monthly Assessments payable during the Initial Period
are less than the actual common expenses incurred during the
Initial Period, the Board shall prepare and approve a supplemental
budget covering the deficiency, copies of which supplemental
budget shall be furnished to each Unit Owner, and thereupon a
supplemental assessment shall be made on each Unit Owner for
his proportionate share of such supplemental budget.

   (c) <u>Annual Budgets</u>.  Annual budgets for each
fiscal year of the Association shall be prepared and adopted
by the Board pursuant to the By-Laws; provided, however, the
Board shall not adopt a budget requiring assessments for
common expenses in an amount exceeding one hundred ten
percent (110%) of the common expenses for the preceding year
unless the same is approved by a majority of the Unit Owners.

   (d) <u>Metered Utilities</u>.  Each Unit Owner shall
also pay for all utility services, including electricity and
other utility services (including telephone), if any,
separately metered for such Unit Owner's Unit.  Each Unit

79160  0319

- 10 -

Owner shall make such payments for separately metered
utility services to the public utility company providing
such utility service is provided directly to the Unit Owner
or to the Association if such utility services are separately
metered or submetered for the Units.

(e) <u>Enforcement of Lien</u>.  The Board may bring an
action at law against the Unit Owner personally obligated to
pay the same, for collection of his unpaid proportionate
share of the common expenses, or foreclose the lien against
the Unit or Units owned by such Unit Owner, and interest,
costs, and reasonable attorney's fees of any such action
shall be added to the amount of such assessment.  Each Unit
Owner, by his acceptance of a deed to a Unit, hereby expressly
vests in the Board or its agents the right and power to
bring all actions against such Unit Owner personally for the
collection of such charges as a debt and to enforce the
aforesaid lien by all methods available for the enforcement
of such liens, including non-judicial foreclosure pursuant
to Article 3810 of the Revised Civil Statutes of Texas and
each such Unit Owner hereby expressly grants to the Board a
power of sale in connection with said lien.  The lien provided
for in this section shall be in favor of the Board and shall
be for the common benefit of all Unit Owners.  The Board
shall have the authority to appoint a trustee, and thereafter
successor trustees from time to time, to act on behalf of
the Board in foreclosing such lien, and such appointment may
be made without any formality other than a written appointment
of a trustee or successor (substitute) trustee, and the
Board may appoint a substitute trustee at any time in its
discretion.  The Board acting on behalf of the Unit Owners
shall have the power to bid upon an interest foreclosed at
foreclosure sale and to acquire and hold, lease, mortgage
and convey the same.

(f) <u>Mortgage Protection</u>.  The lien for common
expenses payable by a Unit Owner shall be subordinate to the
lien of a prior recorded first Mortgage on the interest of
such Unit Owner, except for the amount of the proportionate
share of common expenses which become due and payable from
and after the date on which the Mortgagee thereunder either
takes possession of the Unit encumbered thereby, accepts a
conveyance of any interest therein (other than as security)
or forecloses its Mortgage.  This subparagraph (f) shall not
be amended, changed, modified or rescinded without the prior
written consent of all Mortgagees of record.

79160        (920

11. **Mortgages.** Each Unit Owner shall have the right, subject to the provisions herein, to make separate Mortgages for his respective Unit together with his respective ownership interest in the Common Elements. No Unit Owner shall have the right or authority to make or create or cause to be made or created from the date hereof any Mortgage or other lien on or affecting the Property or any part thereof, except only to the extent of his own Unit and the respective percentage interest in the Common Elements appurtenant thereto.

12. **Separate Real Estate Taxes.** Taxes, assessments and other charges of any taxing or assessing authority shall be separately assessed to each Unit Owner for his Unit and his corresponding percentage of ownership in the Common Elements, as provided in the Act. In the event that such taxes or assessments for any year are not separately assessed to each Unit Owner, but rather are assessed on the Property as a whole, then each Unit Owner shall pay his proportionate share thereof in accordance with his respective percentage of ownership interest in the Common Elements, and, in said event, such taxes or assessments shall be a common expense. Without limiting the authority of the Board provided for elsewhere herein, the Board shall have the authority to collect from the Unit Owners their proportionate share of taxes or assessments for any year in which taxes are assessed on the Property as a whole.

13. **Insurance.** The Board shall have the authority to and shall obtain insurance for the Property, exclusive of decorating of the Units or Limited Common Elements by the Unit Owners, against loss or damage by fire, vandalism, malicious mischief and such other hazards as are covered under standard extended coverage provisions for the full insurable replacement cost of the Common Elements and the Units, and against such other hazards and for such amounts as the Board may deem advisable. Insurable replacement costs shall be deemed the cost of restoring the Common Elements, Units or any part thereof to substantially the same condition in which they existed prior to damage or destruction. Such insurance coverage shall be written in the name of, and the proceeds thereof shall be payable to, the Board as the trustee for each of the Unit Owners in direct ratio to said Unit Owner's respective percentage of ownership in the Common Elements, as set forth in the Declaration, and for the holders of Mortgages on his Unit, if any. Such policies of insurance should also contain, if possible, a waiver of subrogation rights by the insurer

79160    (921

- 12 -

against individual Unit Owners.  The premiums for such
insurance shall be a common expense.

The following provisions shall apply with respect
to damage by fire or other causes:

(a)  If any one of the Buildings is damaged by
fire or other casualty and said damage is limited to
a single Unit, all insurance proceeds shall be paid
to the Unit Owner or one or more Mortgagees of such
Unit, as their respective interests may appear, and
such Unit Owner or Mortgagees shall use the same to
rebuild or repair such Unit substantially in accordance
with the original plans and specifications therefor.
If such damage extends to two or more Units, or extends
to any part of the Common Elements, such insurance
proceeds shall be paid to the Board, as trustee, or
to such bank or trust company as may be designated
by amendment hereof, to be held in trust for the benefit
of the Unit Owners and their Mortgagees as their
respective interests may appear.  The Board shall
thereupon contract to repair or rebuild the damaged
portions of all Units, the Buildings, and the Common
Elements substantially in accordance with the original
plans and specifications therefor and the funds held
in the insurance trust fund shall be used for this
purpose.  If the insurance proceeds are insufficient
to pay all of the costs of repairing or rebuilding,
the Board shall levy a special assessment on all Unit
Owners, in proportion to the percentage interest of
each Unit Owner in the Common Elements, to make up
any deficiency.  If any Unit Owner shall fail to pay
the special assessment within thirty (30) days after
the levy thereof, the Board shall make up the deficiency
by payment from the common expense fund; provided,
however, that such Unit Owner shall remain liable
for such special assessment.

(b)  Notwithstanding the provisions of subparagraph
(a) above, reconstruction shall not be compulsory where
the whole or more than two-thirds (2/3) of all Units
and of the Common Elements is destroyed or damaged by
fire or other casualty, as determined by the Council
of Co-Owners.  In such case, and unless otherwise
unanimously agreed upon by the Unit Owners, the insurance
proceeds shall be delivered to the Unit Owners or their
Mortgagees, as their interests may appear, in proportion
to the percentage interest of each Unit Owner in the

29160
0022

- 13 -

Common Elements; and the Board, as soon as reasonably
possible and as agent for the Unit Owners, shall sell
the Property, in its then condition, free from the
effect of this Declaration, which shall terminate upon
such sale, on terms satisfactory to the Board, and the
net proceeds of such sale, and all funds held by said
insurance trustee, shall thereupon be distributed to
the Unit Owners or their Mortgagees, as their interest
may appear, in proportion to the percentage interest
of each Unit Owner in the Common Elements.

(c)  Within sixty (60) days after any such damage
occurs, the Managing Agent, or the Board shall, or if
they do not, any Unit Owner, the insurer, the insurance
trustee or any Mortgagee may, record a sworn declaration
stating that such damage has occurred, describing it,
identifying the Building suffering such damage, the name
of any insurer against whom claim is made, and the
name of any insurance trustee, reciting that the sworn
declaration is recorded pursuant to this paragraph of
this Declaration, and that a copy of such sworn declaration
has been served pursuant to the provisions of Paragraph
22 hereof on the Unit Owners.

(d)  If the Unit Owners shall not rebuild pursuant
to subparagraph (b) above, and the Board fails to
consummate a sale pursuant to said subparagraph (b)
within twenty-four (24) months after the destruction
or damage occurs, then the Managing Agent, or the Board
shall, or if they do not, any Unit Owner or Mortgagee
may, record a sworn declaration setting forth such
decision and reciting that under the provisions of
this Declaration the prohibition against judicial
partition provided for in Paragraph 5 hereof has
terminated and that judicial partition of the Property
may be obtained pursuant to the laws of the State of
Texas.  Upon final judgment of a court of competent
jurisdiction decreeing such partition, this Declaration
shall terminate.

The Board shall also have the authority to and shall
obtain comprehensive public liability insurance, in such amounts
as it deems desirable, and workmen's compensation insurance
and other liability insurance as it deems desirable, insuring
each Unit Owner, Mortgagee of record, if any, the Association,
its officers, directors, Board and employees, the Declarant,
and the Managing Agent, if any, from liability in connection
with the Common Elements.  The premiums for such insurance
shall be a common expense.

79160  023

- 14 -

The Board shall also have authority to and may obtain such insurance as it deems desirable, in such amounts, from such sources and in such forms as it deems desirable, insuring the Property and each member of the Board and officer of the Association, and member of any committee appointed pursuant to the By-Laws of the Association from liability arising from the fact that said person is or was a director or officer of the Association, or a member of such a committee. The premiums for such insurance shall be a common expense.

Each Unit Owner shall be responsible for obtaining his own insurance on the contents of his own Unit and the contents of the Limited Common Elements serving his Unit, as well as his decorating, furnishing and personal property therein, and his personal property stored elsewhere on the Property. In addition, in the event a Unit Owner desires to insure against his personal liability and loss or damage by fire or other hazards above and beyond the extent that his liability, loss or damage is covered by the liability insurance and instrance against loss or damage by fire and such other hazards obtained by the Board for all of the Unit Owners as part of the common expenses, as above provided, said Unit Owner may, at his option and expense, obtain additional insurance.

14. **Maintenance, Repairs and Replacements.** Except to the extent the Board provides (at its option and discretion) maintenance of the Units for Unit Owners, each Unit Owner, at his own expense, shall furnish and be responsible for all maintenance of, repairs to and replacements within his own Unit. Maintenance of, repairs to and replacements within the Common Elements shall be the responsibility of and shall be furnished by the Association. The cost of maintenance of, repairs to and replacements within the Units to the extent the Board elects to provide such services and within the Common Elements shall be part of the common expenses, subject to the By-Laws, rules and regulations of the Association. However, at the discretion of the Board, maintenance of, repairs to and replacements within the Limited Common Elements may be assessed in whole or in part to Unit Owners benefited thereby, and, further, at the discretion of the Board, the Board may direct Unit Owners who stand to be benefited by such maintenance of, repairs to and replacement within the Limited Common Elements to arrange for such maintenance of, repairs and replacements in the name and for the account of such benefited Unit Owners, pay the cost thereof with their own funds, and procure and deliver to the Board such lien waivers and contractor's and sub-contractor's sworn statements

29160    0024

- 15 -

as may be required to protect the Property from all mechanics'
or materialmen's lien claims that may arise therefrom.

In addition to the discretionary authority provided
herein for maintenance of all or any portion of the Units,
the Board shall have the authority to maintain and repair
any Unit, if such maintenance or repair is reasonably necessary
in the discretion of the Board to protect the Common Elements
or preserve the appearance and value of the Property, and
the Unit Owner of said Unit has failed or refused to perform
said maintenance or repair within a reasonable time after
written notice of the necessity of said maintenance or
repair delivered by the Board, and the Board shall levy a
special assessment against the Unit of such Unit Owner for
the cost of said necessary maintenance or repair.

If, due to the act or neglect of a Unit Owner, or
his agent, servant, tenant, family member, invitee, or
licensee, damage shall be caused to the Common Elements or
to a Unit or Units owned by others, or maintenance, repair
or replacement are required which would otherwise be a
common expense, then such Unit Owner shall pay for such
damage or such maintenance, repair and replacements, as may
be determined by the Association; however, the provisions of
this Paragraph are subject to the provisions of Paragraph 13
hereof providing for waiver of subrogation rights with
respect to casualty damage insured against under the policies
of insurance maintained by the Board.

The authorized representatives of the Association
or Board, or the Managing Agent with approval of the Board,
shall be entitled to reasonable access to the individual
Units and Limited Common Elements as may be required in
connection with the preservation of any individual Unit or
Limited Common Elements in the event of an emergency, or in
connection with maintenance of, repairs or replacements,
within the Common Elements, Limited Common Elements or any
equipment, facilities or fixtures affecting or serving other
Units, Common Elements and Limited Common Elements or to
make any alteration required by any governmental authority.

15.  Declarant's Rights as to Common Facilities.
Notwithstanding anything contained in this Declaration to
the contrary, Declarant hereby reserves and retains unto
itself or its designee, the right and privilege (but not
the obligation) to operate and promulgate rules relating
to, and to maintain, repair or replace, any and all
recreational areas, swimming pools and the like existing

79160   C925

- 16 -

for common use until such time as Declarant has sold Units which correspond, in the aggregate, to 90% of the undivided ownership of the Common Elements, as set forth in Exhibit B to this Declaration. The Board, the Association and all Unit Owners shall be bound by and shall comply with any action taken by Declarant pursuant to this Paragraph 15.

16. **Alterations, Additions or Improvements**. Except as provided in Paragraph 19 herein, no alteration of any Common Elements, or any additions or improvements thereto, shall be made by any Unit Owner without the prior written approval of the Board. The Board may authorize and charge as common expense alterations, additions and improvements of the Common Elements as provided in the By-Laws. Any Unit Owner may make alterations, additions or improvements within the Unit of the Unit Owner without the prior written approval of the Board, but such Unit Owner shall be responsible for any damage to other Units, the Common Elements, the Property, or any part thereof, resulting from such alterations, additions or improvements.

17. **Decorating**. Each Unit Owner, at his own expense, shall furnish and be responsible for all decorating within his own Unit and Limited Common Elements serving his Unit, as may be required from time to time, including painting, wallpapering, washing, cleaning, panelling, floor covering, draperies, window shades, curtains, lighting and other furnishings and decorating. Each Unit Owner shall be entitled to the exclusive use of the interior surfaces of the perimeter walls, floors and ceilings of his Unit, and any balconies and terraces constituting a part thereof, and such Unit Owner shall maintain said interior surfaces in good condition at his sole expense, as may be required from time to time. Said maintenance and use of interior surfaces shall be subject to the rules and regulations of the Association, but each such Unit Owner shall have the right to decorate such interior surfaces from time to time as he may see fit and at his sole expense. Decorating of the Common Elements (other than interior surfaces within the Units as above provided and other than of Limited Common Elements) and any redecorating of Units, to the extent such redecorating of Units is made necessary by damage to Units caused by maintenance, repair or replacement of the Common Elements by the Association, shall be furnished by the Association as part of the common expenses. All windows forming part of a perimeter wall of a Unit shall be cleaned and washed at the expense of the Unit Owner of that Unit. No Unit Owner shall enclose the balcony of his Unit or decorate the portions of such balcony visible

'79160    (926

- 17 -

from outside such Unit in any manner which detracts from the
appearance of the Building, and the determination of the
Board on such matters shall be final.

18. **Encroachments.** If any portions of the Common
Elements shall actually encroach upon any Unit, or if any
Unit shall actually encroach upon any portions of the Common
Elements, or if any Unit shall actually encroach upon another
Unit, as the Common Elements and Units are shown by the
Plat, there shall be deemed to be mutual easements in favor
of the owners of the Common Elements and the respective Unit
Owners involved, to the extent of such encroachments, so
long as the same shall exist.

19. **Use and Occupancy Restrictions.** Subject to the
provisions of this Declaration and By-Laws, no part of the
Property may be used for purposes other than housing and the
related common purposes for which the Property was designed.
Each Unit or any two or more adjoining Units used together
shall be used as a residence or such other use permitted by
this Declaration, and for no other purpose, except that
professional and quasi-professional people may use their
residence as an ancillary or secondary facility to an office
established elsewhere. The foregoing restrictions as to
residence shall not, however, be construed in such manner as
to prohibit a Unit Owner from: (a) maintaining his personal
professional library; (b) keeping his personal business or
professional records or accounts; or (c) handling his personal
business or professional telephone calls or correspondence.
Such uses are expressly declared customarily incidental to
the principal residential use and not in violation of said
restrictions.

The Common Elements shall be used only by the Unit
Owners and their agents, servants, tenants, family members,
customers, invitees and licensees for access, ingress to and
egress from the respective Units and for other purposes
incidental to use of the Units; provided, however, the
garage, storage areas, swimming pool area and other areas
designed for a specific use shall be used for the purposes
approved by the Board. The use, maintenance and operations
of the Common Elements shall not be obstructed, damaged or
unreasonably interferred with by any Unit Owner, and shall
be subject to any lease, concession or easement, presently
in existence or entered into by the Board at some future
time, affecting any part of all of said Common Elements.

29160    C927

- 18 -

Without limiting the generality of the foregoing provisions of this Paragraph 18, use of the Property by the Unit Owners shall be subject to the following restrictions:

(a) Nothing shall be stored in or upon the Common Elements without prior consent of the Board except in storage areas or as otherwise herein expressly provided;

(b) Nothing shall be done or kept in any Unit or in the Common Elements which will increase the rate of insurance for the Property without the prior written consent of the Board. No Unit Owner shall permit anything to be done or kept in his Unit or in or on the Common Elements which will result in the cancellation of insurance on any Unit, or any part of the Common Elements, or which will be in violation of any law;

(c) No waste shall be committed in or on the Common Elements;

(d) Each Unit Owner shall keep and maintain the interior of his Unit in good condition and repair, including all appliances, the entire air conditioning system (including compressors, ducts and vents) serving the Unit (whether the same is inside or outside the Unit), and all electrical systems, water lines and other fixtures located within the Unit;

(e) No animals shall be kept within any Unit or on the Property, except upon the written consent of the Board or the written consent of the Managing Agent acting in accord with the Board's direction, and in accordance with the rules and regulations of the Board applicable thereto;

(f) Each Unit Owner shall provide and maintain garbage and trash receptacles as may be directed by the Board, and all garbage and trash shall be kept in said receptacles;

(g) No Unit Owner or Occupants shall play upon, or suffer to be played upon, any musical instrument, or permit to be operated a phonograph or radio loudspeaker in any Unit or on the Property between the hours of 11:00 o'clock p.m. and the following 9:00 a.m., if the same may tend to disturb or annoy other Occupants of the Buildings nor shall any Occupant or Unit Owner commit or permit any nuisance, or immoral or illegal act in his Unit or on the Property;

79160    0028

- 19 -

(h)  Subject to Declarant's rights under Paragraph 6(4) of this Declaration, no sign of any kind shall be displayed to the public view on or from any Unit or the Common Elements without the prior written consent of the Board or the written consent of the Managing Agent acting in accord with the Board's direction;

(i)  No noxious or offensive activity shall be carried on in any Unit or on or in the Common Elements nor shall anything be done therein which may be or become an annoyance or nuisance to the other Unit Owners;

(j)  Except as expressly provided hereinabove, nothing shall be altered or constructed in or removed from the Common Elements, except upon the written consent of the Board;

(k)  No structure of a temporary character, trailer, tent, shack, garage, barn, or other outbuildings shall be permitted on the Property at any time temporarily or permanently, except with the prior written consent of the Board; provided, however, that temporary structures may be erected for use in connection with the repair or rebuilding of the Buildings or any portion thereof;

(l)  Outdoor drying of clothes, bedding or similar items shall not be permitted;

(m)  Parking of vehicles in driveways and parking areas shall be subject to the rules and regulations of the Board applicable thereto;

(n)  Except within individual Units, no planting, transplanting or gardening shall be done and no fences, hedges or walls shall be erected or maintained upon the Property, except as approved by the Board;

(o)  Motorcycles, motorbikes, motor scooters or other similar vehicles shall not be operated within the Property except for the purpose of transportation, it being intended that said vehicles shall not be operated within the Property so as to annoy or disturb persons or endanger persons or property;

(p)  Neither the Board nor the Association shall take nor permit to be taken any action that unlawfully discriminates against one or more Unit Owners.

79160     (329)

- 20 -

20. **Remedies.** In the event of any violation of the provisions of the Act, Declaration, By-Laws or rules and regulations of the Board or Association by any Unit Owner (either by his own conduct or by the conduct of any other Occupant of his Unit) the Association, or its successors or assigns, or the Board, or its agent, shall have each and all of the rights and remedies which may be provided for in the Act, Declaration, By-Laws, or said rules and regulations, or which may be available at law or in equity, and may prosecute an action or other proceedings against such defaulting Unit Owner and/or others for enforcement of any lien and the appointment of a receiver for the Unit and ownership interest of such Unit Owner, or for damages or injunction or specific performance, or for judgment for payment of money and collection thereof, or for any combination of remedies, or for any other relief. All expenses of the Board in connection with any such actions or proceedings, including court costs and attorney's fees and other fees and expenses and all damages, liquidated or otherwise, together with interest thereon at the maximum lawful rate per annum until paid, shall be charged to and assessed against such defaulting Unit Owner, and shall be added to and deemed part of his respective share of the common expenses, and the Board shall have a lien for all of the same, as well as for non-payment of his respective share of the common expenses, upon the Unit and ownership interest in the Common Elements of such defaulting Unit Owner and upon all of his additions and improvements thereto and upon all of his personal property in his Unit or located elsewhere on the Property; provided, however, that such lien shall be subordinate to the lien of a prior recorded first Mortgage on the interest of such Unit Owner, except for the amount of the proportionate share of said common expenses which become due and payable from and after the date on which the said Mortgage owner or holder either takes possession of the Unit, accepts a conveyance of any interest therein other than through a deed in lieu of foreclosure or as a security or forecloses its Mortgage. This Paragraph shall not be amended, changed, modified or rescinded without the prior consent of all holders of record of Mortgages against Units.

In the event of any such default by any Owner, the Board and the manager of Managing Agent, if so authorized by the Board, shall have the authority to correct such default, and to do whatever may be necessary for such purpose and all expenses in connection therewith shall be charged to and assessed against such defaulting Unit Owner. Any and all

- 21 -      79160    (930

such rights and remedies may be exercised at any time and
from time to time, cumulatively or otherwise, by the Board.

The violation of any restriction or condition or
regulation adopted by the Board or the breach of any covenant
or provision herein contained, shall give the Board the
right, in addition to any other rights provided for in this
Declaration, (a) to enter upon the Unit, or any portion of
the property upon which, or as to which such violation or
breach exists and to summarily abate and remove, at the
expense of the defaulting Unit Owner, any structure, thing
or condition that may exist thereon contrary to the intent
and meaning of the provisions hereof, and the Board, or its
employees or agents, shall not thereby be deemed guilty
in any manner of trespass; or (b) to enjoin, abate or remedy
by appropriate legal proceedings, either at law or in equity,
the continuance of any breach; or (c) to take possession
of such Unit Owner's interest in the property and to maintain
an action for possession of such Unit in the manner provided
by law.

21. Additions of Phase II and Phase III. By this
Declaration, Declarant does not submit Phase II or Phase
III to the provisions of this Declaration. However, Declarant
shall in due course complete and add Phase II and Phase III
to the Property and submit the same to the provisions of
this Declaration upon the following terms and conditions:

(a) Any such addition of Phase II or Phase III,
as the case may be, shall be made by, and shall become
effective upon, Declarant's filing in the Official
Public Records of Dallas County, Texas, a supplemental
declaration (hereinafter referred to as the "Supplemental
Declaration") so stating. No other formality or instru-
ment shall be required. The Supplemental Declaration
shall not require the joinder or consent of the Board,
the Association, any Unit Owner, or any other third
parties; provided, however, the Supplemental Declaration
shall require the joinder of the Veterans Administration
of the United States of America;

(b) By such addition of Phase II or Phase III,
as the case may be, Declarant shall add to the Property
those additional, Common Elements, Limited Common
Elements, Units and Buildings of similar style,
cost and layout within Phase II or Phase III, as
the case may be, as depicted on Exhibit "A" attached
hereto; and

(c) When Declarant so adds Phase II or Phase III,
as the case may be, then the percentage of ownership in

79160    0031

- 22 -

the Common Elements allocated to each respective Unit
(that is, the Units within the Parcel as well as any
Units within Phase II or Phase III) owned by each Unit
Owner (as described in Paragraph 7 above) and the
carport parking spaces appurtenant to each Unit shall
be as described in Exhibit B attached hereto and by
this reference made a part hereof; and

(d)  The Supplemental Declaration may contain such
further provisions as Declarant deems necessary to
properly and effectively add Phase II or Phase III,
as the case may be, to the Property.

Notwithstanding anything contained in this Declaration,
the terms and provisions of this Declaration shall not
cover nor be deemed to burden any other lands owned by
Declarant which are situated adjacent to or near the Parcel,
Phase II or Phase III, and Declarant, its successors and
assigns shall have the right to use any such other lands for
any and all uses as Declarant, its successors or assigns may
elect in their sole discretion.

22.  **Sales and Other Transfers.**  No Unit Owner shall
sell, assign, convey or otherwise transfer his Unit or any
interest therein unless at least thirty (30) days prior to
any such sale, assignment, conveyance or transfer he gives
written notice to the Board of the name(s) and address(es)
of each proposed purchaser, assignee or transferee.  The
purpose of this Paragraph 22 is to make certain that any
proposed purchaser, assignee or transferee is made aware of
the provisions of this Declaration, as well as of any delinquent
assessments, if any, attributable to the applicable Unit,
prior to the consummation of any such purchase, assignment
or transfer.

23.  **Amendment.**  The provisions of this Declaration may
be changed, modified or rescinded by an instrument in writing
setting forth such change, modification or rescission and
signed and acknowledged by Unit Owners owning not less than
seventy-five percent (75%) of the total ownership of Common
Elements; provided, however, that all lien holders of record
have been notified by certified mail of such change, modification
or rescission, and an affidavit by the secretary of the
Association certifying to such mailing is made a part of
such instrument; provided further, however, the provisions
of Paragraph 21 hereof may not be changed, modified or
rescinded without the prior written consent of Declarant.
Except as expressly provided in Paragraph 21 above, the
percentage ownership of the Common Elements provided for in
this Declaration shall not be amended or modified without
the consent of all Unit Owners and of all Mortgagees.

- 23 -          29166     1332

However, if the Act, the Declaration or the By-Laws require the consent or agreement of all Unit Owners or of all Mortgagees for any action specified in the Act or in this Declaration, then any instrument changing, modifying or rescinding any provision of this Declaration with respect to such action shall be signed by all the Unit Owners or all Mortgagees or both as required by the Act or this Declaration.

Declarant shall have the authority, without the joinder or consent of any other party, to make any amendment of this Declaration necessary to clarify any apparently conflicting provisions hereof and/or to correct any mistakes or errors of a clerical nature resulting from typographical or similar errors.

Any change, modification or rescission, whether accomplished under any one or more of the provisions of the preceding paragraphs, shall be effective upon recording of such instrument in the Office of the County Clerk of Dallas County, Texas; provided, however, that no provisions in this Declaration may be changed, modified or rescinded so as to conflict with the provisions of the Act.

24. **Notices.** Notices provided for in the Act, Declaration or By-Laws shall be in writing, and shall be addressed to the Association or Board, or to any Unit Owner, as the case may be, at _____ Dallas, Texas or at such other address as hereinafter provided. The Association or Board may designate a different address or addresses for notices to them, respectively, by giving written notice of such change of address to all Unit Owners. Any Unit Owner may designate a different address for notices to him by giving written notice to the Association. Notices addressed as above shall be deemed delivered when mailed by United States mail with postage prepaid, or when delivered in person.

Upon written request to the Board, the holder of any recorded Mortgage encumbering any Unit shall be given a copy of all notices permitted or required by this Declaration to be given to the Owner or Owners whose Unit is subject to such Mortgage.

25. **Severability.** If any provision of the Declaration or By-Laws, or any section, sentence, clause, phrase, work, or the application thereof in any circumstance, is held invalid, the validity of the remainder of this Declaration

79160    0333

and the By-Laws and of the application of any such provision,
section, sentence, clause, phrase or word in any other circum-
stances shall not be affected thereby and the remainder of this
Declaration or the By-Laws shall be construed as if such invalid
part was never included therein.

26.  **Perpetuities and Restraints on Alienation.**  If any
of the options, privileges, covenants or rights created by
this Declaration shall be unlawful, void or voidable for violation
of the rule against perpetuities or the rule against restraints
on alienation, then such provision shall continue only until
twenty-one (21) years after the death of the survivor of the
now living descendants of the President of the United States,
Jimmy Carter, and Governor of Texas, William Clements.

27.  **Rights and Obligations.**  Each grantee of the Declarant,
by the acceptance of the deed of conveyance from the Declarant,
accepts the same subject to all restrictions, conditions, cove-
nants, reservations, liens and charges, and the jurisdiction,
rights and powers created or reserved by this Declaration.
All rights, benefits and privileges of every character hereby
imposed shall be deemed and taken to be covenants running with
the land, and shall bind any person having at any time any
interest or estate in said land, and shall inure to the benefit
of such grantee in like manner as though the provisions of this
Declaration were recited and stipulated at length in each and
every deed of conveyance or contract for conveyance.

28.  **Prior Mortgagee Approval.**  The prior written approval
of each institutional holder of a First Mortgage, deed of trust
or equivalent security interest on Units in the Project will
be required for at least the following:

(a)  The abandonment or termination of the Project,
except for abandonment or termination provided by law
in the case of substantial destruction by fire or other
casualty or in the case by a taking by condemnation
or eminent domain;

(b)  Any material amendment to the Declaration
or to the By-Laws of the Owners Association, including,
but not limited to, any amendment which would change
the percentage interests of the Unit Owners in the Project;
and

(c)  The effectuation of any decision by the Owners
Association to terminate professional management and
assume self-management of the Project.

29.  **Leases.**  With the exception of a lender in possession
of a Condominium Unit following a default in a First Mortgage,

:

29160        (934)

- 25 -

a foreclosure proceeding or any deed or other arrangement in
lieu of foreclosure, no Unit Owner shall be permitted to lease
his Unit for transient or hotel purposes. No Owner may lease
less than the entire Unit. Any lease agreement shall be required
to provide that the terms of the lease shall be subject in all
respects to the provisions of the Declaration and the By-Laws,
and that any failure by the lessee to comply with the terms
of such documents shall be a default under the lease. All leases
shall be in writing.

30. <u>Mortgagee Rights</u>. Any institutional holder of a First
Mortgage on a Unit in the Project will, upon request, be entitled
to:

    (a)  Inspect the books and records of the Project
during normal business hours;

    (b)  Receive an annual audited financial statement
of the Project within ninety (90) days following the
end of any fiscal year of the Project; and

    (c)  Receive written notice of all meetings of
the Owners Association and be permitted to designate
a representative to attend all such meetings.

31. <u>Damage or Destruction</u>. In the event of substantial
damage to or destruction of any Unit or any part of the Common
Elements, the institutional holder of any First Mortgage on
a Unit will be entitled to timely written notice of any such
damage or destruction.

32. <u>Eminent Domain</u>. If all or any part of the Property
is taken or threatened to be taken by eminent domain or by
power in the nature of eminent domain (whether permanent or
temporary), the Association and each Owner shall be entitled
to participate in proceedings incident thereto at their respective
expense. The Association shall give timely written notice of
the existence of such proceedings to all Owners and to all First
Mortgagees known to the Association to have an interest in any
Condominium Unit. The expense of participation in such proceedings
by the Association shall be borne by the Common Fund. The Asso-
ciation is specifically authorized to obtain and pay for such
assistance from attorneys, appraisers, architects, engineers,
expert witnesses and other persons as the Association in its
discretion deems necessary or advisable to aid or advise it
in matters relating to such proceedings. All damages or awards
for such taking shall be deposited with the Association and
such damages or awards shall be applied as provided herein.

79160   C935

The Association shall have the sole authority to determine whether
to defend or resist any such proceeding, to make any settlement
with respect thereto, or to convey such property to the condemning
authority in lieu of such condemnation proceedings. With respect
to any such taking, all damages and awards shall be determined
for such taking as a whole and not for each Owner's interest
therein. After the damages or awards for such taking are deter-
mined, such damages or awards shall be paid to the account of
each Owner and First Mortgagee, if any, as their interests may
appear in proportion to their percentage ownership interests
in the General Common Elements to be applied or paid as set
forth in the attached Exhibit "B", unless restoration takes
place as herein provided. The Association, if it deems advisable,
may call a meeting of the Owners at which meeting the Owners,
by a majority vote, shall decide whether to replace or restore
as far as possible the General Common Elements so taken or damaged.
In the event it is determined that the General Common Elements
should be replaced or restored by obtaining other land or building
additional structures, this Declaration and the Plat attached
hereto shall be duly amended by an instrument executed by the
Association on behalf of the Owners. In the event such eminent
domain proceeding results in the taking of or damage to one
(1) or more, but less than sixty-six and two-thirds percent
(66-2/3%) of the total number of Condominium Units, then the
damages and awards for such taking shall be determined for each
Condominium Unit and the following shall apply:

     (a)  The Association shall determine which of
the Condominium Units damaged by such taking may be
made tenantable for the purposes set forth in the Decla-
ration, taking into account the nature of this Condo-
minium Project and the reduced size of each Condominium
Unit so damaged.

     (b)  The Association shall determine whether it
is reasonably practical to operate the remaining Condo-
minium Units of the Project, including those damaged
Units which may be made tenantable, as a Condominium
in the manner provided in this Declaration.

     (c)  In the event the Association determines it
is not reasonably practical to operate the undamaged
Condominium Units and the damaged Units which can be
made tenantable, then the Condominium Project shall
be deemed to be regrouped and merged into a single
estate owned jointly in undivided interest by all Owners,
as tenants-in-common, in the percentage ownership interest
previously owned by each Owner in the General Common
Elements.

79160   0936

- 27 -

(d)  In the event the Association determines it
will be reasonably practical to operate the undamaged
Condominium Units and the damaged Units which can be
made tenantable as a Condominium Unit, then the damages
and awards made with respect to each Unit which has
been determined to be capable of being made tenantable
shall be applied to repair and to reconstruct such
Condominium Unit so that it is made tenantable.  If
the cost of such work exceeds the amount of the award,
the additional funds required shall be assessed against
those Condominium Units which are tenantable.  With
respect to those Units which may not be tenantable,
the award made shall be paid as set forth in Exhibit
"A" of the Declaration hereof, and the remaining portion
of such Units, if any, shall become a part of the General
Common Elements.  Upon payment of such award for the
account of such Owner as provided herein, such Condominium
Unit shall no longer be a part of the Condominium Project,
and the percentage ownership interest in the General
Common Elements appurtenant to each remaining Condominium
Unit which shall continue as a part of the Condominium
Project shall be equitably adjusted to distribute the
ownership of the undivided interest in the General
Common Elements among the reduced number of Owners.
If the entire Condominium Project is taken, or sixty-
six and two-thirds percent (66-2/3%) or more of the
Condominium Units are taken or damaged by such taking,
all damages and awards shall be paid to the accounts
of the Owners of Units, as provided herein, in proportion
to their percentage ownership interests in the General
Common Elements; and this Condominium Regime shall
terminate upon such payment.  Upon such termination,
the Condominium Units and General Common Elements shall
be deemed to be regrouped and merged into a single
estate owned in undivided interest by all Owners as
tenants-in-common in the percentage ownership interest
previously owned by each Owner in the General Common
Elements.  Any damages or awards provided in this
paragraph shall be paid to or for the account of any
Owner and First Mortgagee, if any, as their interests
may appear.

33.  Management Agreement.  Any management agreement for
the Project will be terminable by the Owners Association for
cause upon thirty (30) days' written notice thereof and the
term of any such agreement may not exceed one (1) year; however,
such agreement may be renewable by the parties for successive
one (1)-year periods.

Y'.

79160   1937

- 28 -

34.  **Unit Owner Default.**  The Owners Association shall upon written request give the holders of First Mortgages prompt notice in the event of default in the Unit mortgagor's obligations under the Condominium documents not cured within thirty (30) days of default.

35.  **Fidelity Coverage.**  The Association shall maintain adequate fidelity coverage to protect against dishonest acts by its officers, directors and employees who are responsible for handling Association funds.  Said coverage shall name the Association as obligee, be written in an amount of at least one hundred fifty percent (150%) of the estimated annual operating budget, contain waivers of any defense based on exclusion of employees who serve without compensation, and shall not be canceled or substantially modified without at least thirty (30) days' notice to all First Mortgagees of record.

IN WITNESS WHEREOF, the said U. S. HOME CORPORATION has caused its name to be signed to these presents by its duly authorized officer on this 14 day of August , 1979.

U. S. HOME CORPORATION

By Richard Flournoy
   Region President

ATTEST:

Michael T. Richardson
Secretary



79166   (938

- 29 -

THE STATE OF TEXAS                    X

COUNTY OF DALLAS                      X


   BEFORE ME, the undersigned authority, on this day
personally appeared  Richard Flournoy - Region President
       of U. S. HOME CORPORATION, known to me
to be the person and officer whose name is subscribed to the
foregoing instrument and acknowledged to me that he executed the
same as the act of such corporation for the purposes and considera-
tion therein expressed, and in the capacity therein stated.

   GIVEN UNDER MY HAND AND SEAL OF OFFICE this the
14th day of  August                    , 1979.


        Notary Public in and for
        Dallas County, Texas


     List of Attachments


  Exhibit A - Plat

  Exhibit B - Ownership Interests in Common Elements and
      Designation of Parking Spaces Appurtenant
      to Each Unit


             29160    0039

- 30 -

EXHIBIT "A"
LEGAL DESCRIPTION
F. D. HAMILTON SURVEY
DALLAS COUNTY, TEXAS
PHASE I, HEARTHWOOD

Being a parcel tract of land in the F. D. Hamilton Survey, Abstract No. 647, City of Dallas, Block 8415 and A/8415, Dallas County, Texas, and being part of the same tract conveyed by Martha Elaine Reddick Presley, et al, to Ralph E. Graham as recorded in Vol. 71084, page 1432, and being all of Lots 1 and 2 of Block A/8415 of Allen Estates as recorded in Volume 46, page 231, Dallas County Deed Records, and all of Golden Acres Drive and a 10 ft. alley adjacent as abandoned by City Ordinance #15800 and being more particularly described as follows:

BEGINNING at the northeast corner of Pinyon Tree Apartment Addition to the City of Dallas as recorded in Vol. 69081, page 2239 of the Deed Records of Dallas County, Texas, said point being in the west right-of-way of Abrams Road (100 foot right-of-way at this point).

THENCE S 89°41'10" W, along the north line of said Pinyon Tree Apartment Addition, a distance of 1,173.29 feet;

THENCE N 0°18'50" W, a distance of 122.00 feet;

THENCE N 89°41'10" E, a distance of 139.79 feet;

THENCE S 0°18'50" E, a distance of 72.00 feet;

THENCE N 89°41'10" E, a distance of 667.40 feet;

THENCE N 0°18'50" W, a distance of 102.41 feet;

THENCE S 89°44'57" W, a distance of 223.00 feet;

THENCE N 0°15'03" W, a distance of 168.00 feet;

THENCE N 89°44'57" E, partially along the south line of the Chimney Hill Addition as recorded in Vol. 71208, page 2232, Deed Records of Dallas County, Texas, a distance of 583.00 feet to an iron rod set for a corner in the west right-of-way line of Abrams Road (75 foot right-of-way at this point);

THENCE S 0°28'42" E, along the west right-of-way of Abrams Road, a distance of 160.01 feet to an iron rod set for a corner;

79160    C040

Carter & Burgess, Inc.
February 8, 1979

C&B No. 7853602
Page 1 of 2

THENCE N 89°44'57" E, a distance of 5.00 feet to an iron rod set for a corner;

THENCE S 0°28'42" E, along the west right-of-way of Abrams Road, a distance of 160.00 feet to an iron pipe found at the POINT OF BEGINNING and containing 4.6868 acres (204,157 S.F.) of land.

79160    0941

Carter & Burgess, Inc.
February 8, 1979

Phase I

C&B No. 7853602
Page 2 of 2



Scale : 1"=100'

# Phase I

## HEARTHWOOD ADDITION

CITY OF DALLAS
COUNTY OF DALLAS
STATE OF TEXAS



CARTER & BURGESS, INC.
ENGINEERS • PLANNERS

LEGAL DESCRIPTION
F. D. HAMILTON SURVEY
DALLAS COUNTY, TEXAS
PHASE II, HEARTHWOOD

Being a parcel tract of land in the F. D. Hamilton Survey,
Abstract No. 647, City of Dallas, Block 8415 and A/8415, Dallas
County, Texas, and being part of the same tract conveyed by Martha
Elaine Reddick Presley, et al, to Ralph E. Graham as recorded in
Vol. 71084, page 1432, and being all of Lots 1 and 2 of Block A/8415
of Allen Estates as recorded in Volume 46, page 231, Dallas County
Deed Records, and all of Golden Acres Drive and a 10 ft. alley
adjacent as abandoned by City Ordinance #15800 and being more
particularly described as follows:

BEGINNING at the northeast corner of Pinyon Tree Apartment
Addition to the City of Dallas as recorded in Vol. 69081, page 2239
of the Deed Records of Dallas County, Texas, said point being in the
west right-of-way of Abrams Road (100 foot right-of-way at this
point).

THENCE S 89°41'10" W, along the north line of said Pinyon Tree
Apartment Addition, a distance of 1,173.29 feet;

    THENCE N 0°18'50" W, a distance of 122.00 feet;

    THENCE N 89°41'10" E, a distance of 139.79 feet;

    THENCE S 0°18'50" E, a distance of 72.00 feet;

    THENCE N 89°41'10" E, a distance of 127.00 feet;

    THENCE N 0°18'50" W, a distance of 131.00 feet;

    THENCE N 89°41'10" E, a distance of 150.43 feet;

    THENCE N 0°15'03" W, a distance of 139.84 feet;

    THENCE N 89°44'57" E, partially along the south line of the
Chimney Hill Addition as recorded in Vol. 71208, page 2232, Deed
Records of Dallas County, Texas, a distance of 750.00 feet to an
iron rod set for a corner in the west right-of-way line of Abrams
Road (75 foot right-of-way at this point);

    THENCE S 0°28'42" E, along the west right-of-way of Abrams
Road, a distance of 160.01 feet to an iron rod set for a corner;

Carter & Burgess, Inc.                          C&B No. 7853602
February 8, 1979                                Page 1 of 2

79160   C943

THENCE N 89°44'57" E, a distance of 5.00 feet to an iron rod set for a corner;

THENCE S 0°28'42" E, along the west right-of-way of Abrams Road, a distance of 160.00 feet to an iron pipe found at the POINT OF BEGINNING and containing 6.7020 acres (291,939 S.F.) of land.

Carter & Burgess, Inc.
February 8, 1979

Phase II

C&B No. 7853602
Page 2 of 2

79160    C944



# Phase 2

## HEARTHWOOD ADDITION

CITY OF DALLAS
COUNTY OF DALLAS
STATE OF TEXAS





LEGAL DESCRIPTION
F. D. HAMILTON SURVEY
DALLAS COUNTY, TEXAS
PHASE III, HEARTHWOOD

Being a parcel tract of land in the F. D. Hamilton Survey, Abstract No. 647, City of Dallas, Block 8415 and A/8415, Dallas County, Texas, and being part of the same tract conveyed by Martha Elaine Reddick Presley, et al, to Ralph E. Graham as recorded in Vol. 71094, page 1432, and being all of Lots 1 and 2 of Block A/8415 of Allen Estates as recorded in Volume 46, page 231, Dallas County Deed Records, and all of Golden Acres Drive and a 10 ft. alley adjacent as abandoned by City Ordinance #15800 and being more particularly described as follows:

BEGINNING at the northeast corner of Pinyon Tree Apartment Addition to the City of Dallas as recorded in Vol. 69081, page 2239 of the Deed Records of Dallas County, Texas, said point being in the west right-of-way of Abrams Road (100 foot right-of-way at this point).

THENCE S 89°41'10" W, along the north line of said Pinyon Tree Apartment Addition, a distance of 1,238.29 feet;

THENCE N 0°18'50" W, a distance of 157.36 feet;

THENCE N 11°26'27" E, a distance of 167.50 feet;

THENCE N 89°44'57" E along the south line of the Chimney Hill Addition as recorded in Vol. 71208, page 2232, Deed Records of Dallas County, Texas, a distance of 1,198.25 feet to an iron rod set for a corner in the west right-of-way of Abrams Road (75 foot right-of-way at this point);

THENCE S 0°28'42" E, along the west right-of-way of Abrams Road, a distance of 160.01 feet to an iron rod set for a corner;

THENCE N 89°44'57" E, a distance of 5.00 feet to an iron rod set for a corner;

THENCE S 0°28'42" E, along the west right-of-way of Abrams Road, a distance of 160.00 feet to an iron pipe found at the POINT OF BEGINNING and containing 9.03 acres (393,369 S.F.) of land.

29160      6946

Carter & Burgess, Inc.
March 7, 1979

C&B No. 7853602
Page 1 of 1



# TYPE I BUILDING
## FIRST FLOOR PLAN

## GENERAL NOTES

1. The dimensions and limits of the individual units are along the interior faces of the boundary walls as indicated by the heavy lines, and are typical for like units. These dimensions are based on drawings, plans, and data prepared by Lattice Architects.

2. All boundary walls are common elements.

3. Style of unit is depicted as A, B, C, D, E, or F.

79160    1948

/ ¯ 7 CARTER & BURGESS, INC.
/  : / ENGINEERS · PLANNERS



# TYPE I BUILDING
## SECOND FLOOR PLAN

GENERAL NOTES

1. The dimensions and limits of the individual units are along the interior faces of the boundary walls as indicated by the heavy lines, and are typical for like units. These dimensions are based on drawings, plans, and data prepared by Lattice Architects.

2. All boundary walls are common elements.

3. Style of unit is depicted as A,B,C,D,E, or F.



## TYPE 1 BUILDING
## THIRD FLOOR PLAN

### GENERAL NOTES

1. The dimensions and limits of the individual units are along the interior faces of the boundary walls as indicated by the heavy lines, and are typical for like units. These dimensions are based on drawings, plans, and data prepared by Loftice Architects.

2. All boundary walls are common elements.

3. Style of unit is depicted as A,B,C,D,E, or F.      79160    0550

CARTER & BURGESS, INC.
ENGINEERS • PLANNERS



# TYPE 2 BUILDING
## FIRST FLOOR PLAN

### GENERAL NOTES

1. The dimensions and limits of the individual units are along the interior
   faces of the boundary walls as indicated by the heavy lines, and are
   typical for like units. These dimensions are based on drawings, plans,
   and data prepared by L office Architects.

2. All boundary walls are common elements.

3. Style of unit is depicted as A,B,C,D,E, or F.

'29160    C351

CARTER & BURGESS INC.
ENGINEERS · PLANNERS



SCALE 1" = 20'

# TYPE 2 BUILDING
## SECOND FLOOR PLAN

GENERAL NOTES

1.  The dimensions and limits of the individual units are along the interior faces of the boundary walls as indicated by the heavy lines, and are typical for like units. These dimensions are based on drawings, plans, and data prepared by Loffice Architects.

2.  All boundary walls are common elements.

3.  Style of unit is depicted as A, B, C, D, E, or F.

79160    (952

CARTER & BURGESS, INC.
ENGINEERS • PLANNERS



# TYPE 2 BUILDING
## THIRD FLOOR PLAN

GENERAL NOTES

1. The dimensions and limits of the individual units are along the interior faces of the boundary walls as indicated by the heavy lines, and are typical for like units. These dimensions are based on drawings, plans, and data prepared by Loftica Architects.

2. All boundary walls are common elements.

3. Style of unit is depicted as A,B,C,D,E, or F.

79160     (953



# TYPE 3 BUILDING
## FIRST FLOOR PLAN

**SCALE : 1" = 20'**

### GENERAL NOTES

1   The dimensions and limits of the individual units are along the interior faces of the boundary walls as indicated by the heavy lines, and are typical for like units.   These dimensions are based on drawings, plans, and data prepared by Loftice Architects.

2.  All boundary walls are common elements.

3.  Style of unit is depicted as A, B, C, D, E, or F.

CARTER & BURGESS INC
ENGINEERS • PLANNERS



# TYPE 3 BUILDING
## SECOND FLOOR PLAN

GENERAL NOTES

1. The dimensions and limits of the individual units are along the interior faces of the boundary walls as indicated by the heavy lines, and are typical for like units. These dimensions are based on drawings, plans, and data prepared by Lattice Architects.

2. All boundary walls are common elements.

3. Style of unit is depicted as A,B,C,D,E, or F.

CARTER & BURGESS, INC
ENGINEERS • PLANNERS





SCALE: 1" = 20'

## TYPE 3 BUILDING
### THIRD FLOOR PLAN

### GENERAL NOTES

1. The dimensions and limits of the individual units are along the interior faces of the boundary walls as indicated by the heavy lines, and are typical for like units. These dimensions are based on drawings, plans, and data prepared by Loftice Architects.

2. All boundary walls are common elements.

3. Style of unit is depicted as A,B,C,D,E, or F.

79160    1956



TYPE 4 BUILDING
FIRST FLOOR PLAN

GENERAL NOTES

1. The dimensions and limits of the individual units are along the interior faces of the boundary walls as indicated by the heavy lines, and are typical for like units. These dimensions are based on drawings, plans, and data prepared by Loftice Architects.

2. All boundary walls are common elements.

3. Style of unit is depicted as A, B, C, D, E, or F.



# TYPE 4 BUILDING SECOND FLOOR PLAN

## GENERAL NOTES

1. The dimensions and limits of the individual units are along the interior faces of the boundary walls as indicated by the heavy lines, and are typical for like units. These dimensions are based on drawings, plans, and data prepared by Loftice Architects.

2. All boundary walls are common elements.

3. Style of unit is depicted as A, B, C, D, E, or F.

CARTER & BURGESS INC.
ENGINEERS · PLANNERS



# TYPE 4 BUILDING-THIRD FLOOR PLAN

## GENERAL NOTES

1. The dimensions and limits of the individual units are along the interior faces of the boundary walls as indicated by the heavy lines, and are typical for like units. These dimensions are based on drawings, plans, and data prepared by Loftica Architects.

2. All boundary walls are common elements.

3. Style of unit is depicted as A, B, C, D, F, or F.

CARTER & BURGESS INC.
ENGINEERS · PLANNERS



# TYPE 5 BUILDING
## FIRST FLOOR PLAN

SCALE: 1" = 20'

## GENERAL NOTES

1. The dimensions and limits of the individual units are along the interior faces of the boundary walls as indicated by the heavy lines, and are typical for like units. These dimensions are based on drawings, plans, and data prepared by Loffice Architects.

2. All boundary walls are common elements.

3. Style of unit is depicted as A, B, C, D, E, or F.

CARTER & BURGESS INC
ENGINEERS · PLANNERS

BUILDING E



SCALE: 1" = 20'

# TYPE 5 BUILDING
## SECOND FLOOR PLAN

GENERAL NOTES

1. The dimensions and limits of the individual units are along the interior faces of the boundary walls as indicated by the heavy lines, and are typical for like units. These dimensions are based on drawings, plans, and data prepared by Lattice Architects.

2. All boundary walls are common elements.

3. Style of unit is depicted as A, B, C, D, F, or F.

CARTER & BURGESS INC
ENGINEERS · PLANNERS



SCALE: 1" = 20'

# TYPE 5 BUILDING
## THIRD FLOOR PLAN

## GENERAL NOTES

1. The dimensions and limits of the individual units are along the interior faces of the boundary walls as indicated by the heavy lines, and are typical for like units. These dimensions are based on drawings, plans, and data prepared by Lattice Architects.

2. All boundary walls are common elements.

3. Style of unit is depicted as A, B, C, D, E, or F.

CARTER & BURGESS INC.
ENGINEERS · PLANNERS

BUILDING 'F'



SCALE: 1" = 20'

**TYPE B BUILDING**
FIRST FLOOR PLAN

GENERAL NOTES

1. The dimensions and limits of the individual units are along the interior faces of the boundary walls as indicated by the heavy lines, and are typical for like units. These dimensions are based on drawings, plans, and data prepared by Loftice Architects.

2. All boundary walls are common elements.

3. Style of unit is depicted as A,B,C,D,E, or F.

CARTER & BURGESS INC
ENGINEERS • PLANNERS



# TYPE 5 BUILDING
## SECOND FLOOR PLAN

GENERAL NOTES

1   The dimensions and limits of the individual units are along the interior faces of the boundary walls as indicated by the heavy lines, and are typical for like units. These dimensions are based on drawings, plans, and data prepared by Loftice Architects.

2.  All boundary walls are common elements.

3.  Style of unit is depicted as A, B, C, D, E, or F.



BUILDING



# TYPE 5 BUILDING
## THIRD FLOOR PLAN

GENERAL NOTES

1. The dimensions and limits of the individual units are along the interior faces of the boundary walls as indicated by the heavy lines, and are typical for like units. These dimensions are based on drawings, plans, and data prepared by t.office Architects.

2. All boundary walls are common elements.

3. Style of unit is depicted as A,B,C,D,E, or F.

CARTER & BURGESS INC
ENGINEERS • PLANNERS

79160    1.965



# TYPE 5 BUILDING
## FIRST FLOOR PLAN

SCALE: 1"= 20'

### GENERAL NOTES

1. The dimensions and limits of the individual units are along the interior faces of the boundary walls as indicated by the heavy lines, and are typical for like units. These dimensions are based on drawings, plans, and data prepared by Loftice Architects.

2. All boundary walls are common elements.

3. Style of unit is depicted as A, B, C, D, E, or F.

79160        C966

CARTER & BURGESS, INC.
ENGINEERS • PLANNERS

BUILDING G



# TYPE 5 BUILDING
## SECOND FLOOR PLAN

SCALE: 1" = 20'

GENERAL NOTES

1. The dimensions and limits of the individual units are along the interior faces of the boundary walls as indicated by the heavy lines, and are typical for like units.  These dimensions are based on drawings, plans, and data prepared by Loffice Architects.

2. All boundary walls are common elements.

3. Style of unit is depicted as A, B, C, D, E, or F.

29160   L967

CARTER & BURGESS, INC.
ENGINEERS • PLANNERS
FORT WORTH, TEXAS



## TYPE 5 BUILDING
### THIRD FLOOR PLAN

GENERAL NOTES

1. The dimensions and limits of the individual units are along the interior faces of the boundary walls as indicated by the heavy lines, and are typical for like units.   These dimensions are based on drawings, plans, and data prepared by Loftice Architects.

2. All boundary walls are common elements.

3. Style of unit is depicted as A,B,C,D,E, or F.

29160    1968

CARTER & BURGESS, INC.
ENGINEERS • PLANNERS

BUILDING "H"



SCALE: 1" = 20'

# TYPE G BUILDING
## FIRST FLOOR PLAN

### GENERAL NOTES

1. The dimensions and limits of the individual units are along the interior faces of the boundary walls as indicated by the heavy lines, and are typical for like units. These dimensions are based on drawings, plans, and data prepared by Loftice Architects.

2. All boundary walls are common elements.

3. Style of unit is depicted as A, B, C, D, F, or F.

CARTER & BURGESS INC
ENGINEERS • PLANNERS

BUILDING 'H'



SCALE : 1" = 20'

# TYPE G BUILDING
## SECOND FLOOR PLAN

## GENERAL NOTES

1. The dimensions and limits of the individual units are along the interior faces of the boundary walls as indicated by the heavy lines, and are typical for like units. These dimensions are based on drawings, plans, and data prepared by Loftice Architects.

2. All boundary walls are common elements.

3. Style of unit is depicted as A, B, C, D, F, or F.    79160    1970

CARTER & ...
ENGINEERS ...
...



# TYPE 6 BUILDING
## THIRD FLOOR PLAN

**GENERAL NOTES**

1. The dimensions and limits of the individual units are along the interior faces of the boundary walls as indicated by the heavy lines, and are typical for like units. These dimensions are based on drawings, plans, and data prepared by Loftics Architects.

2. All boundary walls are common elements.

3. Style of unit is depicted as A,B,C,D,E, or F.



# TYPE 2 BUILDING
## FIRST FLOOR PLAN

GENERAL NOTES

1. The dimensions and limits of the individual units are along the interior faces of the boundary walls as indicated by the heavy lines, and are typical for like units. These dimensions are based on drawings, plans, and data prepared by Loftice Architects.

2. All boundary walls are common elements.

3. Style of unit is depicted as A, B, C, D, E, or F.

CARTER & BURGESS, INC.    79160    C2/2
ENGINEERS • PLANNERS

BUILDING 1



# TYPE 2 BUILDING
## SECOND FLOOR PLAN

GENERAL NOTES

1. The dimensions and limits of the individual units are along the interior faces of the boundary walls as indicated by the heavy lines, and are typical for like units. These dimensions are based on drawings, plans, and data prepared by Loftice Architects.

2. All boundary walls are common elements.

3. Style of unit is depicted as A,B,C,D,E, or F.

CARTER & BURGESS INC.
ENGINEERS · PLANNERS

79160    0923



# TYPE 2 BUILDING
## THIRD FLOOR PLAN

### GENERAL NOTES

1. The dimensions and limits of the individual units are along the interior faces of the boundary walls as indicated by the heavy lines, and are typical for like units. These dimensions are based on drawings, plans, and data prepared by Loftice Architects.

2. All boundary walls are common elements.

3. Style of unit is depicted as A, B, C, D, E, or F.

CARTER & BURGESS INC.
ENGINEERS · PLANNERS



EXHIBIT B

## Percentage of Undivided Shares in the Common Elements and of Sharing Common Expenses Appurtenant to Each Unit

The following schedule sets forth for each phase the percentage of ownership of the common elements, which is also the percentage of sharing common expenses and surplus appurtenant to each unit:

| | | Phase 1 | Phase 2 | Phase 3 |
|---|---|---|---|---|
| To be completed by: | | December 31, 1979 | June 30, 1980 | December 31, 1980 |
| Number of Units to be added: | | 66 | 72 | 66 |
| Total Units: | | 66 | 138 | 204 |
| Building 1 | 111 | 1.062785% | .523104% | .351932% |
| | 112 | 1.584518 | .779901 | .524700 |
| | 113 | 1.305072 | .642358 | .432163 |
| | 114 | 1.959094 | .964269 | .648738 |
| | 115 | 1.718295 | .845746 | .568997 |
| | 116 | 1.464118 | .720640 | .484830 |
| | 121 | 1.832749 | .902081 | .606898 |
| | 122 | 1.584518 | .779901 | .524700 |
| | 123 | 1.305072 | .642358 | .432163 |
| | 124 | 1.959094 | .964269 | .648738 |
| | 125 | 1.718295 | .845746 | .568997 |
| | 126 | 1.464118 | .720640 | .484830 |
| | 131 | 1.832749 | .902081 | .606898 |
| | 132 | 1.584518 | .779901 | .524700 |
| | 133 | 1.305072 | .642358 | .432163 |
| | 134 | 1.959094 | .964269 | .648738 |
| | 135 | 1.718295 | .845746 | .568997 |
| | 136 | 1.464118 | .720640 | .484830 |
| | | 28.821574% | 14.186008% | 9.544012% |
| Building 2 | 211 | 1.464118% | .720641% | .484830% |
| | 212 | 1.464118 | .720641 | .484830 |
| | 213 | 1.464118 | .720641 | .484830 |
| | 214 | 1.464118 | .720641 | .484830 |
| | 215 | 1.305072 | .642358 | .432163 |
| | 216 | 1.305072 | .642358 | .432163 |
| | 217 | 1.305072 | .642358 | .432163 |
| | 218 | 1.305072 | .642358 | .432163 |
| | 221 | 1.464118 | .720641 | .484830 |
| | 222 | 1.464118 | .720641 | .484830 |
| | 223 | 1.464118 | .720641 | .484830 |
| | 224 | 1.464118 | .720641 | .484830 |
| | 225 | 1.305072 | .642358 | .432163 |
| | 226 | 1.305072 | .642358 | .432163 |
| | 227 | 1.305072 | .642358 | .432163 |
| | 228 | 1.305072 | .642358 | .432163 |
| | 231 | 1.464118 | .720641 | .484830 |
| | 232 | 1.464118 | .720641 | .484830 |
| | 233 | 1.464118 | .720641 | .484830 |
| | 234 | 1.464118 | .720641 | .484830 |
| | 235 | 1.305072 | .642358 | .432163 |
| | 236 | 1.305072 | .642358 | .432163 |
| | 237 | 1.305072 | .642358 | .432163 |
| | 238 | 1.305072 | .642358 | .432163 |
| | | 33.230280% | 16.355988% | 11.003916% |

79160   1976

| | | Phase 1 | Phase 2 | Phase 3 |
|---|---|---|---|---|
| Building 3 | 311 | 1.718295% | .845746% | .568997% |
| | 312 | 1.718295 | .845746 | .568997 |
| | 313 | 1.584517 | .779901 | .524700 |
| | 314 | 1.584517 | .779901 | .524700 |
| | 315 | 1.062786 | .523104 | .351932 |
| | 316 | 1.062786 | .523104 | .351932 |
| | 317 | 1.959093 | .964269 | .648738 |
| | 318 | 1.959093 | .964269 | .648738 |
| | 321 | 1.718295 | .845746 | .568997 |
| | 322 | 1.718295 | .845746 | .568997 |
| | 323 | 1.584517 | .779901 | .524700 |
| | 324 | 1.584517 | .779901 | .524700 |
| | 325 | 1.062786 | .523104 | .351932 |
| | 326 | 1.062786 | .523104 | .351932 |
| | 327 | 1.959093 | .964269 | .648738 |
| | 328 | 1.959093 | .964269 | .648738 |
| | 331 | 1.718295 | .845746 | .568997 |
| | 332 | 1.718295 | .845746 | .568997 |
| | 333 | 1.584517 | .779901 | .524700 |
| | 334 | 1.584517 | .779901 | .524700 |
| | 335 | 1.062786 | .523104 | .351932 |
| | 336 | 1.062786 | .523104 | .351932 |
| | 337 | 1.959093 | .964269 | .648738 |
| | 338 | 1.959093 | .964269 | .648738 |
| | | 37.948146% | 18.670120% | 12.566202% |
| TOTAL PHASE 1 | | 100.0000000% | | |
| Building 4 | 411 | | .779901% | .524700% |
| | 412 | | .779901 | .524700 |
| | 413 | | .779901 | .524700 |
| | 414 | | .779901 | .524700 |
| | 415 | | .845746 | .568997 |
| | 416 | | .845746 | .568997 |
| | 417 | | .845746 | .568997 |
| | 418 | | .845746 | .568997 |
| | 421 | | .779901 | .524700 |
| | 422 | | .779901 | .524700 |
| | 423 | | .779901 | .524700 |
| | 424 | | .779901 | .524700 |
| | 425 | | .845746 | .568997 |
| | 426 | | .845746 | .568997 |
| | 427 | | .845746 | .568997 |
| | 428 | | .845746 | .568997 |
| | 431 | | .779901 | .524700 |
| | 432 | | .779901 | .524700 |
| | 433 | | .779901 | .524700 |
| | 434 | | .779901 | .524700 |
| | 435 | | .845746 | .568997 |
| | 436 | | .845746 | .568997 |
| | 437 | | .845746 | .568997 |
| | 438 | | .845746 | .568997 |
| | | | 19.507764% | 13.124364% |

|  |  | Phase 2 | Phase 3 |
|---|---|---|---|
| Building 5 | 511 | .7799018 | .5247008 |
|  | 512 | .779901 | .524700 |
|  | 513 | .523104 | .351932 |
|  | 514 | .523104 | .351932 |
|  | 515 | .523104 | .351932 |
|  | 516 | .523104 | .351932 |
|  | 517 | .779901 | .524700 |
|  | 518 | .779901 | .524700 |
|  | 521 | .779901 | .524700 |
|  | 522 | .779901 | .524700 |
|  | 523 | .523104 | .351932 |
|  | 524 | .523104 | .351932 |
|  | 525 | .523104 | .351932 |
|  | 526 | .523104 | .351932 |
|  | 527 | .779901 | .524700 |
|  | 528 | .779901 | .524700 |
|  | 531 | .779901 | .524700 |
|  | 532 | .779901 | .524700 |
|  | 533 | .523104 | .351932 |
|  | 534 | .523104 | .351932 |
|  | 535 | .523104 | .351932 |
|  | 536 | .523104 | .351932 |
|  | 537 | .779901 | .524700 |
|  | 538 | .779901 | .524700 |
|  |  | 15.636060% | 10.519584% |
| Building 6 | 611 | .7799018 | .5247008 |
|  | 612 | .779901 | .524700 |
|  | 613 | .523104 | .351932 |
|  | 614 | .523104 | .351932 |
|  | 615 | .523104 | .351932 |
|  | 616 | .523104 | .351932 |
|  | 617 | .779901 | .524700 |
|  | 618 | .779901 | .524700 |
|  | 621 | .779901 | .524700 |
|  | 622 | .779901 | .524700 |
|  | 623 | .523104 | .351932 |
|  | 624 | .523104 | .351932 |
|  | 625 | .523104 | .351932 |
|  | 626 | .523104 | .351932 |
|  | 627 | .779901 | .524700 |
|  | 628 | .779901 | .524700 |
|  | 631 | .779901 | .524700 |
|  | 632 | .779901 | .524700 |
|  | 633 | .523104 | .351932 |
|  | 634 | .523104 | .351932 |
|  | 635 | .523104 | .351932 |
|  | 636 | .523104 | .351932 |
|  | 637 | .779901 | .524700 |
|  | 638 | .779901 | .524700 |
|  |  | 15.636060% | 10.519584% |
| TOTAL PHASE 2 |  | 100.0000008 |  |

79160   C978

**Phase 3**

| Building 7 | 711 | .524700% |
|---|---|---|
| | 712 | .524700 |
| | 713 | .351932 |
| | 714 | .351932 |
| | 715 | .351932 |
| | 716 | .351932 |
| | 717 | .524700 |
| | 718 | .524700 |
| | 721 | .524700 |
| | 722 | .524700 |
| | 723 | .351932 |
| | 724 | .351932 |
| | 725 | .351932 |
| | 726 | .351932 |
| | 727 | .524700 |
| | 728 | .524700 |
| | 731 | .524700 |
| | 732 | .524700 |
| | 733 | .351932 |
| | 734 | .351932 |
| | 735 | .351932 |
| | 736 | .351932 |
| | 737 | .524700 |
| | 738 | .524700 |

**10.519584%**

| Building 8 | 811 | .568997% |
|---|---|---|
| | 812 | .568997 |
| | 813 | .648738 |
| | 814 | .648738 |
| | 815 | .648738 |
| | 816 | .648738 |
| | 821 | .568997 |
| | 822 | .568997 |
| | 823 | .648738 |
| | 824 | .648738 |
| | 825 | .648738 |
| | 826 | .648738 |
| | 831 | .568997 |
| | 832 | .568997 |
| | 833 | .648738 |
| | 834 | .648738 |
| | 835 | .648738 |
| | 836 | .648738 |

**11.198838%**

**Phase 3**

| Building 9 | | |
|---|---|---|
| | 911 | .4848300 |
| | 912 | .484830 |
| | 913 | .484830 |
| | 914 | .484830 |
| | 915 | .432163 |
| | 916 | .432163 |
| | 917 | .432163 |
| | 918 | .432163 |
| | 921 | .484830 |
| | 922 | .484830 |
| | 923 | .484830 |
| | 924 | .484830 |
| | 925 | .432163 |
| | 926 | .432163 |
| | 927 | .432163 |
| | 928 | .632163 |
| | 931 | .484830 |
| | 932 | .484830 |
| | 933 | .484830 |
| | 934 | .484830 |
| | 935 | .432163 |
| | 936 | .432163 |
| | 937 | .432163 |
| | 938 | .432163 |

**11.0039160**

**TOTAL PHASE 3**                **100.0000000**

'79160   C980

## HEARTHWOOD NORTH CONDOMINIUMS

### Phase 1
### % Of Ownership Schedule

| Type Unit | Sq.Ft. | No. of Units | Total Sq.Ft. | Percent | Aggregate Percent |
|---|---|---|---|---|---|
| A | 715 | 7 | 5,005 | .0106278 | .0744 |
| B | 878 | 15 | 13,170 | .0130507 | .1958 |
| C | 985 | 15 | 14,775 | .0146411 | .2196 |
| D | 1,066 | 9 | 9,594 | .0158451 | .1426 |
| D$^1$ | 1,233 | 2 | 2,466 | .0183274 | .0366 |
| E | 1,156 | 9 | 10,404 | .0171829 | .1547 |
| F | 1,318 | 9 | 11,862 | .0195909 | .1763 |
| | | 66 | 67,276 | | 1.00000 |

### PHASE 1

3 Buildings - 66 Units
135 Parking Spaces Required
238 Parking Spaces Provided
67,276 Square Feet Living Area

## HEARTHWOOD NORTH CONDOMINIUMS

### Phase 2
### % Of Ownership Schedule

| Type Unit | Sq.Ft. | No. of Units | Total Sq.Ft. | Percent | Aggregate Percent |
|-----------|--------|--------------|--------------|---------|-------------------|
| A  | 715   | 31 | 22,165  | .0052310 | .1622 |
| B  | 878   | 15 | 13,170  | .0064236 | .0964 |
| C  | 985   | 15 | 14,775  | .0072064 | .1081 |
| D  | 1,066 | 45 | 47,970  | .0077990 | .3509 |
| D$^1$ | 1,233 | 2  | 2,466   | .0090208 | .0180 |
| E  | 1,156 | 21 | 24,276  | .0084575 | .1776 |
| F  | 1,318 | 9  | 11,862  | .0096427 | .0868 |
|    |       | 138 | 136,684 |          | 1.00000 |

### PHASE 2

6 Buildings - 138 Units
274 Parking Spaces Required
336 Parking Spaces Provided
136,684 Square Feet Living Area

70160   C082

## HEARTHWOOD NORTH CONDOMINIUMS

### Phase 3
### % Of Ownership Schedule

| Type Unit | Sq.Ft. | No. of Units | Total Sq.Ft. | Percent | Aggregate Percent |
|-----------|--------|--------------|--------------|---------|-------------------|
| A | 715 | 43 | 30,745 | .0035193 | .1513 |
| B | 878 | 27 | 23,706 | .0043216 | .1167 |
| C | 985 | 27 | 26,595 | .0048483 | .1309 |
| D | 1,066 | 57 | 60,762 | .0052470 | .2991 |
| $D^1$ | 1,233 | 2 | 2,466 | .0060690 | .0122 |
| E | 1,156 | 27 | 31,212 | .0056900 | .1536 |
| F | 1,318 | 21 | 27,678 | .0064874 | .1362 |
| | | 204 | 203,164 | | 1.0000% |

### PHASE 3

9 Buildings - 204 Units
407 Parking Spaces Required
460 Parking Spaces Provided
203,164 Square Feet Living Area

79160    C983

U S HOME CORP
13773 N. CENTRAL EXWY #1142
Dallas Tx 75243

FILED
X.E. Mardoch
COUNTY CLERK
DALLAS COUNTY

'78 AUG 15 PM 12:13



STATE OF TEXAS                    COUNTY OF DALLAS
I hereby certify that this instrument was filed on the
date and time stamped hereon by me and was duly re-
corded in the volume and page of the named records
of Dallas County, Texas as stamped hereon by me

AUG 16 1979

X.E. Mardoch
COUNTY CLERK, Dallas County, Texas

79160    C984

DEED RECORD

SUPPLEMENTAL DECLARATION

OF MERGER AND ANNEXATION        ᴬ        5913        0    1 12/28/79    11.00 DEED

STATE OF TEXAS              X
                                              KNOW ALL MEN BY THESE PRESENTS:
COUNTY OF DALLAS            X


THIS DECLARATION is made on the date set forth below by U.S. HOME
CORPORATION, hereinafter called "Declarant",

WITNESSETH:

WHEREAS, Declarant is the owner of certain property in the County of
Dallas, State of Texas, which is more particularly described on the attached
Exhibit "A", and

WHEREAS, by a Condominium Declaration, hereinafter called "Declaration",
filed on August 16, 1979, and recorded in Volume 76160, Page 910, of the
Condominium Records of Dallas County, Texas, the Declarant therein restricted
HEARTHWOOD NORTH I, PHASE I, consisting of sixty-six (66) units, to Condominium
ownership; and

WHEREAS, the above referenced Declaration provides in Paragraph 21 that
the Declarant may annex additional property to HEARTHWOOD NORTH I, PHASE I,
as defined therein; and

WHEREAS, the Declarant is desirous of annexing and merging the adjoining
tracts described as PHASE II and PHASE III respectively in the Declaration;

NOW THEREFORE, Declarant hereby declares that all of the property described
above as PHASE II and PHASE III in the Declaration shall be held, sold and
conveyed subject to the easements, restrictions, covenants and conditions
set forth in the Declaration for HEARTHWOOD NORTH I, PHASE I, all of which
are for the purpose of enhancing and protecting the value, desirability and
attractiveness of the real property described above.  The said easements,
restrictions, covenants and conditions shall run with the above described
property and shall be binding on all parties having or acquiring any right,
title or interest in the said property or any part thereof, their heirs, suc-
cessors and assigns, and shall inure to the benefit of each owner and lessee
thereof.

The property described in the plat of HEATHWOOD NORTH I as PHASE II and
PHASE III, which description is attached hereto as Exhibit "A" shall become

79251 2136

a part of the regime, as defined in the Declaration, and the units shown on
the plat of PHASE II and PHASE III respectively, shall become units as defined
in the Declaration and from and after the filing hereof, HEARTHWOOD NORTH I,
PHASE II and PHASE III, shall be a part of the regime as if it had been ori-
ginally described in the Declaration and the percentage of ownership interest
in the Common Areas is hereby reallocated and established among the total
two hundred and four (204) units as set out in Exhibit "B" of the said Condo-
minium Declaration.

    IN WITNESS WHEREOF, the undersigned, being the Declarant herein, has
hereto set his hand and seal this 27th day of December,
1979.

                                    U.S. HOME CORPORATION


                                    By _____

ATTEST:


_____
            Secretary

UNOFFICIAL

79251 2137

- 2 -

EXHIBIT "A"
## LEGAL DESCRIPTION
### F. D. HAMILTON SURVEY
### DALLAS COUNTY, TEXAS
### PHASE II, HEARTHWOOD

Being a parcel tract of land in the F. D. Hamilton Survey, Abstract No. 647, City of Dallas, Block 8415 and A/8415, Dallas County, Texas, and being part of the same tract conveyed by Martha Elaine Reddick Presley, et al, to Ralph E. Graham as recorded in Vol. 71084, page 1432, and being all of Lots 1 and 2 of Block A/8415 of Allen Estates as recorded in Volume 46, page 231, Dallas County Deed Records, and all of Golden Acres Drive and a 10 ft. alley adjacent as abandoned by City Ordinance #15800 and being more particularly described as follows:

BEGINNING at the northeast corner of Pinyon Tree Apartment Addition to the City of Dallas as recorded in Vol. 69081, page 2239 of the Deed Records of Dallas County, Texas, said point being in the west right-of-way of Abrams Road (100 foot right-of-way at this point).

THENCE S 89°41'10" W, along the north line of said Pinyon Tree Apartment Addition, a distance of 1,173.29 feet;

THENCE N 0°18'50" W, a distance of 122.00 feet;

THENCE N 89°41'10" E, a distance of 139.79 feet;

THENCE S 0°18'50" E, a distance of 72.00 feet;

THENCE N 89°41'10" E, a distance of 127.00 feet;

THENCE N 0°18'50" W, a distance of 131.00 feet;

THENCE N 89°41'10" E, a distance of 150.43 feet;

THENCE N 0°15'03" W, a distance of 139.84 feet;

THENCE N 89°44'57" E, partially along the south line of the Chimney Hill Addition as recorded in Vol. 71208, page 2232, Deed Records of Dallas County, Texas, a distance of 750.00 feet to an iron rod set for a corner in the west right-of-way line of Abrams Road (75 foot right-of-way at this point);

THENCE S 0°28'42" E, along the west right-of-way of Abrams Road, a distance of 160.01 feet to an iron rod set for a corner;

Carter & Burgess, Inc.
February 8, 1979

Phase II
C&B No. 7853602
Page 1 of 2

79251 2138

1 of 3

THENCE N 89°44'57" E, a distance of 5.00 feet to an iron rod set for a corner;

THENCE S 0°28'42" E, along the west right-of-way of Abrams Road, a distance of 160.00 feet to an iron pipe found at the POINT OF BEGINNING and containing 6.7020 acres (291,939 S.F.) of land.



Carter & Burgess, Inc.
February 8, 1979

Phase II
C&B No. 7853602
Page 2 of 2

79251 2139

LEGAL DESCRIPTION
F. D. HAMILTON SURVEY
DALLAS COUNTY, TEXAS
PHASE III, HEARTHWOOD

Being a parcel tract of land in the F. D. Hamilton Survey, Abstract No.
647, City of Dallas, Block 8415 and A/8415, Dallas County, Texas, and being
part of the same tract conveyed by Martha Elaine Reddick Presley, et al, to
Ralph E. Graham as recorded in Vol. 71084, page 1432, and being all of Lots 1
and 2 of Block A/8415 of Allen Estates as recorded in Volume 46, page 231,
Dallas County Deed Records, and all of Golden Acres Drive and a 10 ft. alley
adjacent as abandoned by City Ordinance #15800 and being more particularly
described as follows:

BEGINNING at the northeast corner of Pinyon Tree Apartment Addition to
the City of Dallas as recorded in Vol. 69081, page 2239 of the Deed Records
of Dallas County, Texas, said point being in the west right-of-way of Abrams
Road (100 foot right-of-way at this point).

THENCE S 89°41'10" W, along the north line of said Pinyon Tree Apartment
Addition, a distance of 1,238.29 feet;

THENCE N 0°18'50" W, a distance of 157.36 feet;

THENCE N 11°26'27" E, a distance of 167.50 feet;

THENCE N 89°44'57" E along the south line of the Chimney Hill Addition as
recorded in Vol. 71208, page 2232, Deed Records of Dallas County, Texas, a
distance of 1,198.25 feet to an iron rod set for a corner in the west right-
of-way of Abrams Road (75 foot right-of-way at this point);

THENCE S 0°28'42" E, along the west right-of-way of Abrams Road, a dis-
tance of 160.01 feet to an iron rod set for a corner;

THENCE N 89°44'57" E, a distance of 5.00 feet to an iron rod set for a
corner;

THENCE S 0°28'42" E, along the west right-of-way of Abrams Road, a dis-
tance of 160.00 feet to an iron pipe found at the POINT OF BEGINNING and con-
taining 9.03 acres (393,369 S.F.) of land.

VOL   PAGE
**79251 2140**

ter & Burgess, Inc.
rch 7, 1979

Phase III
C&B No. 7853602
Page 1 of 1

3 of 3



STATE OF TEXAS                                    COUNTY OF DALLAS
I hereby certify that this instrument was filed on the
date and time stamped herein by me and was duly
noted in the volume and page of the named records
of Dallas County, Texas as stamped hereon by me

DEC 28 1979

L.E. Murdock,
COUNTY CLERK, Dallas County, Texas

Return to:
U.S. Homes
13773 No. Central Expressway
Dallas Texas 75-245

79251 2141